Doran MALONE, Joseph P. Danielle and Adrienne M. Danielle, Plaintiffs below, Appellants,

v.

John. N. BRINCAT, Dennis H. Chookaszian, William C. Croft, Clifford R. Johnson, Andrew McNally, IV, Bruce I. McPhee, Fred G. Steingraber, Phillip J. Wicklander and KPMG Peat Marwick, LLP, Defendants below, Appellees.

No. 459, 1997.

Supreme Court of Delaware.

Submitted: Sept. 3, 1998.
Decided: Dec. 18, 1998.

William Prickett (argued), Ronald A. Brown, Jr., and Thomas A. Mullen, of Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, Delaware; Arthur T. Susman, and Terrence Buehler, of Susman, Buehler & Watkins, Chicago, Illinois; and Clinton A. Krislov, of Krislov & Associates, Ltd., Chicago, Illinois, for appellants.

R. Judson Scaggs, Jr. (argued), Thomas R. Hunt, Jr. and Christopher F. Carlton, of Morris, Nichols, Arsht & Tunnell, Wilmington, Delaware; Garrett Johnson, and Dani R. James, of Kirkland & Ellis, Chicago, Illinois, for appellees, Dennis H. Chookaszian, William C. Croft, Clifford R. Jonson, Andrew McNally, IV, Bruce I. McPhee, Fred G. Steingraber and Phillip J. Wicklander.

Robert K. Payson, of Potter, Anderson & Corroon, Wilmington, Delaware; Steven F. Molo, Todd J. Ehlman, and P. Lee Berger, of Winston & Strawn, Chicago, Illinois, for appellee, John N. Brincat.

Allen M. Terrell, Jr. (argued) and Catherine G. Dearlove, of Richards, Layton & Finger, P.A., Wilmington, Delaware; Williams F. Lloyd, Linton J. Childs, of Sidley & Austin, Chicago, Illinois; Thomas C. Green, of Sidley & Austin, Washington, DC; and, Edwin D. Scott, of KPMG Peat Marwick LLP of New York City, for appellee, KPMG Peat Marwick LLP.

Before VEASEY, Chief Justice, WALSH, HOLLAND, HARTNETT and BERGER, Justices (constituting the Court en Banc).

HOLLAND, Justice:

Doran Malone, Joseph P. Danielle, and Adrienne M. Danielle, the plaintiffs-appellants, filed this individual and class action in the Court of Chancery. The complaint alleged that the directors of Mercury Finance Company ("Mercury"), a Delaware corporation, breached their fiduciary duty of disclosure. The individual defendant-appellee directors are John N. Brincat, Dennis H. Chookaszian, William C. Croft, Clifford R. Johnson, Andrew McNally, IV, Bruce I. McPhee, Fred G. Steingraber, and Phillip J. Wicklander. The complaint also alleged that the defendant-appellee, KPMG Peat Marwick LLP ("KPMG") aided and abetted the Mercury directors' breaches of fiduciary duty. The Court of Chancery dismissed the complaint with prejudice pursuant to Chancery Rule 12(b)(6) for failure to state a claim upon which relief may be granted.

The complaint alleged that the director defendants intentionally overstated the financial condition of Mercury on repeated occasions throughout a four-year period in disclosures to Mercury's shareholders. Plaintiffs contend that the complaint states a claim upon which relief can be granted for a breach of the fiduciary duty of disclosure. Plaintiffs also contend that, because the director defendants breached their fiduciary duty of disclo-

sure to the Mercury shareholders, the Court of Chancery erroneously dismissed the aiding and abetting claim against KPMG.

This Court has concluded that the Court of Chancery properly granted the defendants' motions to dismiss the complaint. That dismissal, however, should have been without prejudice. Plaintiffs are entitled to file an amended complaint. Therefore, the judgment of the Court of Chancery is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

### Facts

Mercury is a publicly-traded company engaged primarily in purchasing installment sales contracts from automobile dealers and providing short-term installment loans directly to consumers. This action was filed on behalf of the named plaintiffs and all persons (excluding defendants) who owned common stock of Mercury from 1993 through the present and their successors in interest, heirs and assigns (the "putative class"). The complaint alleged that the directors "knowingly and intentionally breached their fiduciary duty of disclosure because the SEC filings made by the directors and every communication from the company to the shareholders since 1994 was materially false" and that "as a direct result of the false disclosures ... the Company has lost all or virtually all of its value (about $2 billion)." The complaint also alleged that KPMG knowingly participated in the directors' breaches of their fiduciary duty of disclosure.

According to plaintiffs, since 1994, the director defendants caused Mercury to disseminate information containing overstatements of Mercury's earnings, financial performance and shareholders' equity. Mercury's earnings for 1996 were actually only $56.7 million, or $.33 a share, rather than the $120.7 million, or $.70 a share, as reported by the director defendants. Mercury's earnings in 1995 were actually $76.9 million, or $.44 a share, rather than $98.9 million, or $.57 a share, as reported by the director defen-

dants. Mercury's earnings for 1994 were $83 million, or $.47 a share, rather than $86.5 million, or $.49 a share, as reported by the director defendants. Mercury's earnings for 1993 were $64.2 million, rather than $64.9 million, as reported by the director defendants. Shareholders' equity on December 31, 1996 was disclosed by the director defendants as $353 million, but was only $263 million or less. The complaint alleged that all of the foregoing inaccurate information was included or referenced in virtually every filing Mercury made with the SEC and every communication Mercury's directors made to the shareholders during this period of time.

Having alleged these violations of fiduciary duty, which (if true) are egregious, plaintiffs alleged that as "a direct result of [these] false disclosures ... the company has lost all or virtually all its value (about $2 billion)," and seeks class action status to pursue damages against the directors and KPMG for the individual plaintiffs and common stockholders. The individual director defendants filed a motion to dismiss, contending that they owed no fiduciary duty of disclosure under the circumstances alleged in the complaint. KPMG also filed a motion to dismiss the aiding and abetting claim asserted against it.

After briefing and oral argument, the Court of Chancery granted both of the motions to dismiss with prejudice. The Court of Chancery held that directors have no fiduciary duty of disclosure under Delaware law in the absence of a request for shareholder action. In so holding, the Court stated:

> The federal securities laws ensure the timely release of accurate information into the marketplace. The federal power to regulate should not be duplicated or impliedly usurped by Delaware. When a shareholder is damaged merely as a result of the release of inaccurate information into the marketplace, unconnected with any Delaware corporate governance issue, that shareholder must seek a remedy under federal law.[1]

---

1. *Malone v. Brincat*, Del. Ch., C.A. No. 15510, 1997 WL 697940, at *2 (Oct. 30, 1997)(Mem.Op.).

We disagree, and although we hold that the Complaint as drafted should have been dismissed, our rationale is different.

### Standard of Review

A motion to dismiss a complaint presents the trial court with a question of law and is subject to *de novo* review by this Court on appeal.[2] This Court and the trial court must accept all well-pleaded allegations of fact as true.[3] A complaint should be dismissed for failure to state a claim only when it appears "with a reasonable certainty that a plaintiff would not be entitled to the relief sought under any set of facts which could be proven to support the action." [4]

### Issue On Appeal

■ This Court has held that a board of directors is under a fiduciary duty to disclose material information when seeking shareholder action [5]:

It is well-established that the duty of disclosure "represents nothing more than the well-recognized proposition that directors of Delaware corporations are under a fiduciary duty to disclose fully and fairly all material information within the board's control *when it seeks shareholder action.*"[6]

The majority of opinions from the Court of Chancery have held that there may be a cause of action for disclosure violations only where directors seek shareholder action.[7] The present appeal requires this Court to decide whether a director's fiduciary duty arising out of misdisclosure is implicated in the absence of a request for shareholder action. We hold that directors who knowingly disseminate false information that results in corporate injury or damage to an individual stockholder violate their fiduciary duty, and may be held accountable in a manner appropriate to the circumstances.

### Fiduciary Duty
### Delaware Corporate Directors

■ An underlying premise for the imposition of fiduciary duties is a separation of legal control from beneficial ownership.[8] Equitable principles act in those circumstances to protect the beneficiaries who are not in a position to protect themselves.[9] One of the fundamental tenets of Delaware corporate law provides for a separation of control and ownership. The board of directors has the legal responsibility to manage the business of a corporation for the benefit of its shareholder owners.[10] Accordingly, fiduciary duties are imposed on the directors of Delaware corporations to regulate their conduct when they discharge that function.[11]

2. *Solomon v. Pathe Communications Corp.*, Del. Supr., 672 A.2d 35, 39 (1996); *Precision Air, Inc. v. Standard Chlorine of Delaware, Inc.*, Del.Supr., 654 A.2d 403, 406 (1995).

3. *See, e.g., Kofron v. Amoco Chemicals Corp.*, Del.Supr., 441 A.2d 226, 227 (1982).

4. *Rabkin v. Philip A. Hunt Chemical Corp.*, Del. Supr., 498 A.2d 1099, 1104 (1985); *accord In re Santa Fe Pacific Corp. Shareholder Litig.*, Del. Supr., 669 A.2d 59, 65 (1995) *citing In re Tri-Star Pictures, Inc. Litig.*, Del.Supr., 634 A.2d 319, 326 (1993).

5. *See Loudon v. Archer–Daniels–Midland Co.*, Del. Supr., 700 A.2d 135, 137–38 (1997) ("... Delaware law of the fiduciary duties of directors ... establishes a general duty to disclose to stockholders all material information reasonably available when seeking stockholder action ... But there is no *per se* doctrine imposing liability ...."); *Arnold v. Society for Savings Bancorp, Inc.*, Del.Supr., 650 A.2d 1270, 1277 (1994) (a fiduciary disclosure obligation "attaches to proxy statements and any other disclosures in contemplation of shareholder action."); *Stroud v. Grace*, Del.Supr., 606 A.2d 75, 84 (1992) ("directors of Delaware corporations are under a fiduciary duty to disclose fully and fairly all material information within the board's control when it seeks shareholder action.").

6. *Zirn v. VLI Corp.*, Del.Supr., 681 A.2d 1050, 1056 (1996) *quoting Stroud v. Grace*, 606 A.2d at 84 (emphasis added).

7. *Kahn v. Roberts*, Del.Supr., 679 A.2d 460, 467 (1996) (collecting cases). *Cf. Ciro, Inc. v. Gold*, D. Del., 816 F.Supp. 253, 267 (1993).

8. *See McMahon v. New Castle Associates*, Del. Ch., 532 A.2d 601, 604 (1987).

9. *Id.*

10. 8 *Del. C.* § 141(a).

11. *Mills Acquisition Co. v. Macmillan, Inc.*, Del. Supr., 559 A.2d 1261, 1280 (1989).

The directors of Delaware corporations stand in a fiduciary relationship not only to the stockholders but also to the corporations upon whose boards they serve.[12] The director's fiduciary duty to both the corporation and its shareholders has been characterized by this Court as a triad: due care, good faith, and loyalty.[13] That triparte fiduciary duty does not operate intermittently but is the constant compass by which all director actions for the corporation and interactions with its shareholders must be guided.

Although the fiduciary duty of a Delaware director is unremitting, the exact course of conduct that must be charted to properly discharge that responsibility will change in the specific context of the action the director is taking with regard to either the corporation or its shareholders.[14] This Court has endeavored to provide the directors with clear signal beacons and brightly lined-channel markers as they navigate with due care, good faith, and loyalty on behalf of a Delaware corporation and its shareholders.[15] This Court has also endeavored to mark the safe harbors clearly.[16]

### Director Communications
### Shareholder Reliance Justified

The shareholder constituents of a Delaware corporation are entitled to rely upon their elected directors to discharge their fiduciary duties at all times. Whenever directors communicate publicly or directly with shareholders about the corporation's affairs, with or without a request for shareholder action, directors have a fiduciary duty to shareholders to exercise due care, good faith and loyalty. It follows *a fortiori* that when directors communicate publicly or directly with shareholders about corporate matters the *sine qua non* of directors' fiduciary duty to shareholders is honesty.[17]

According to the appellants, the focus of the fiduciary duty of disclosure is to protect shareholders as the "beneficiaries" of all material information disseminated by the directors. The duty of disclosure is, and always has been, a specific application of the general fiduciary duty owed by directors. The duty of disclosure obligates directors to provide the stockholders with accurate and complete information material to a transaction or other corporate event that is being presented to them for action.

The issue in this case is not whether Mercury's directors breached their duty of disclosure. It is whether they breached their more general fiduciary duty of loyalty and good faith by knowingly disseminating to the stockholders false information about the financial condition of the company. The directors' fiduciary duties include the duty to deal with their stockholders honestly.

Shareholders are entitled to rely upon the truthfulness of all information dissemi-

**12.** *Guth v. Loft,* Del.Supr., 5 A.2d 503, 510 (1939). *See* David A. Drexler et al., *Delaware Corporation Law* § 15.02 (Matthew Bender 1988).

**13.** *Cede & Co. v. Technicolor, Inc.,* Del.Supr., 634 A.2d 345, 361 (1993).

**14.** *Mills Acquisition Co. v. Macmillan, Inc.,* 559 A.2d at 1280.

**15.** *See, e.g., Unocal Corp. v. Mesa Petroleum Co.,* Del.Supr., 493 A.2d 946, 954 (1985) (directors have an "enhanced duty" in the context of a threatened takeover because of the "omnipresent specter that a board may be acting primarily in its own interests, rather than those of the corporation and its shareholders...."); *Revlon, Inc. v. MacAndrews Forbes Holdings, Inc.,* Del.Supr., 506 A.2d 173, 182 (1985) (when sale of the

company becomes inevitable, the director's duties are "significantly altered.").

**16.** *See Broz v. Cellular Information Systems, Inc.,* Del.Supr., 673 A.2d 148, 157 (1996); *In re Tri-Star Pictures, Inc., Litig.,* 634 A.2d at 333; *Rabkin v. Philip A. Hunt Chemical Corp.,* 498 A.2d at 1106. *Compare* Veasey & Manning, *Codified Standard, Safe Harbor or Unchartered Reef,* 35 Bus. Law. 919 (1980), with Arsht & Hinsey, *Codified Standard—Safe Harbor but Chartered Channel,* 35 Bus. Law. ix (1980).

**17.** *Marhart, Inc. v. Calmat Co.,* Del. Ch., CA. No. 11820, Berger, V.C., 1992 WL 212587 (Apr. 22, 1992), slip op. at 6 (reported in 18 Del. J. Corp. L. 330 (1993)) ("Delaware directors are fiduciaries and are held to a high standard of conduct .... It is entirely consistent with this settled principle of law that fiduciaries who undertake the responsibility of informing shareholders

nated to them by the directors they elect to manage the corporate enterprise.[18] Delaware directors disseminate information in at least three contexts: public statements made to the market, including shareholders; statements informing shareholders about the affairs of the corporation without a request for shareholder action; and, statements to shareholders in conjunction with a request for shareholder action. Inaccurate information in these contexts may be the result of a violation of the fiduciary duties of care, loyalty or good faith. We will examine the remedies that are available to shareholders for misrepresentations in each of these three contexts by the directors of a Delaware corporation.

### State Fiduciary Disclosure Duty Shareholder Remedy In Action Requested Context

In the absence of a request for stockholder action, the Delaware General Corporation Law does not require directors to provide shareholders with information concerning the finances or affairs of the corporation.[19] Even when shareholder action is sought, the provisions in the General Corporation Law requiring notice to the shareholders of the proposed action do not require the directors to convey substantive information beyond a statutory minimum.[20] Consequently, in the context of a request for shareholder action, the protection afforded by Delaware law is a judicially recognized equitable cause of action by shareholders against directors.

The fiduciary duty of directors in connection with disclosure violations in Delaware jurisprudence was restated in *Lynch v. Vickers Energy Corp.*, Del.Supr., 383 A.2d 278 (1978). In *Lynch*, this Court held that, in making a tender offer to acquire the stock of the minority stockholders, a majority stockholder "owed a fiduciary duty ... which required 'complete candor' in disclosing fully 'all the facts and circumstances surrounding the' tender offer." [21] In *Stroud v. Grace*, we noted that the language of our jurisprudence should be clarified to the extent that "candor" requires no more than the duty to disclose all material facts when seeking stockholder action.[22] An article by Professor Lawrence Hamermesh [23] includes an excellent historical summary of the content, context, and parameters of the law of disclosure, as it has been developed in a series of decisions during the last two decades.[24]

The duty of directors to observe proper disclosure requirements derives from the combination of the fiduciary duties of care, loyalty and good faith.[25] The plaintiffs

---

about corporate affairs, be required to do so honestly.").

**18.** *Id.*

**19.** *See* David A. Drexler et al., *Delaware Corporation Law* § 15.07A (Matthew Bender 1998).

**20.** *See Stroud v. Grace*, 606 A.2d at 85 (discussing 8 *Del. C.* § 222(a) and 242(b)(1)).

**21.** *Lynch v. Vickers Energy Corp.*, Del.Supr., 383 A.2d 278, 279 (1978) *quoting Lynch v. Vickers Energy Corp.*, Del. Ch., 351 A.2d 570, 573 (1976); *accord Shell Petroleum, Inc. v. Smith*, Del.Supr., 606 A.2d 112, 114–15 (1992) (majority stockholder bears burden of showing full disclosure of all facts within its knowledge that are material to stockholder action). The fiduciary duty of disclosure is also applicable to directors of a Delaware corporation, *In re Anderson, Clayton Shareholders Litig.*, Del. Ch., 519 A.2d 680, 688–90 (1986); *Smith v. Van Gorkom*, Del. Supr., 488 A.2d 858, 890 (1985) and to less-than-majority shareholders who control or affirmatively attempt to man-

date the destiny of the corporation. *In re Tri–Star Pictures, Inc. Litig.*, 634 A.2d at 328–29.

**22.** *Stroud v. Grace*, 606 A.2d at 84.

**23.** Lawrence A. Hamermesh, *Calling Off the Lynch Mob: A Corporate Director's Fiduciary Disclosure Duty*, 49 Vand. L.Rev. 1087, 1174 n. 394 (1996).

**24.** *See, e.g., Zirn v. VLI Corp.*, 681 A.2d at 1056; *see also Arnold v. Society for Savings Bancorp*, 650 A.2d at 1276–77; *In re Tri–Star Pictures, Inc. Litig.*, 634 A.2d at 331–32, 334; *Cede & Co. v. Technicolor, Inc.*, 634 A.2d at 372–73; *Zirn v. VLI Corp.*, Del.Supr., 621 A.2d 773, 778 (1993); *Stroud v. Grace*, 606 A.2d at 84–88; *Bershad v. Curtiss–Wright Corp.*, Del.Supr., 535 A.2d 840, 846 (1987); *Rosenblatt v. Getty Oil Co.*, Del. Supr., 493 A.2d 929, 936, 944–45 (1985); *Smith v. Van Gorkom*, 488 A.2d at 889–93; *Weinberger v. UOP, Inc.*, Del.Supr., 457 A.2d 701, 710–12 (1983).

**25.** *See Cinerama, Inc. v. Technicolor, Inc.*, Del. Supr, 663 A.2d 1156, 1160 (1995); *Zirn v. VLI Corp.*, 621 A.2d at 778.

contend that, because directors fiduciary responsibilities are not "intermittent duties," there is no reason why the duty of disclosure should not be implicated in every public communication by a corporate board of directors. The directors of a Delaware corporation are required to disclose fully and fairly all material information within the board's control when it seeks shareholder action.[26] When the directors disseminate information to stockholders when no stockholder action is sought, the fiduciary duties of care, loyalty and good faith apply. Dissemination of false information could violate one or more of those duties.

■■■■ An action for a breach of fiduciary duty arising out of disclosure violations in connection with a request for stockholder action does not include the elements of reliance, causation and actual quantifiable monetary damages.[27] Instead, such actions require the challenged disclosure to have a connection to the request for shareholder action. The essential inquiry in such an action is whether the alleged omission or misrepresentation is material.[28] Materiality is determined with respect to the shareholder action being sought.[29]

■■■ The directors' duty to disclose all available material information in connection with a request for shareholder action must be balanced against its concomitant duty to protect the corporate enterprise, in particular, by keeping certain financial information confidential.[30] Directors are required to provide shareholders with all information that is material to the action being requested and to provide a balanced, truthful account of all matters disclosed in the communications with shareholders.[31] Accordingly, directors have definitive guidance in discharging their fiduciary duty by an analysis of the factual circumstances relating to the specific shareholder action being requested and an inquiry into the potential for deception or misinformation.[32]

## Fraud On Market
## Regulated by Federal Law

■■■ When corporate directors impart information they must comport with the obligations imposed by both the Delaware law and the federal statutes and regulations of the United States Securities and Exchange Commission ("SEC").[33] Historically, federal law has regulated disclosures by corporate directors into the general interstate market.[34] This Court has noted that "in observing its congressional mandate the SEC has

26. *Loudon v. Archer–Daniels–Midland Company,* 700 A.2d at 141–44; *Zirn v. VLI Corp.,* 681 A.2d at 1056; *Arnold v. Society for Savings Bancorp,* 650 A.2d at 1276–77; *Stroud v. Grace,* 606 A.2d at 84. *Rosenblatt v. Getty Oil Co.,* 493 A.2d at 944–45; *Smith v. Van Gorkom,* 488 A.2d at 889–90; *Lynch v. Vickers Energy Corp.,* 383 A.2d at 279, 281.

27. *See Cinerama, Inc. v. Technicolor, Inc.,* 663 A.2d at 1163; *In re Tri–Star Pictures, Inc. Litig.,* 634 A.2d at 327 n. 10 and 333. *Loudon v. Archer–Daniels–Midland Co.,* 700 A.2d at 142 ("where directors have breached their disclosure duties in a corporate transaction ... there must at least be an award of nominal damages.").

28. *E.g., Stroud v. Grace,* 606 A.2d at 85.

29. In *Rosenblatt v. Getty Oil Co.,* 493 A.2d at 944, this Court adopted the materiality standard set forth by the United States Supreme Court in *TSC Industries, Inc. v. Northway, Inc.,* 426 U.S. 438, 449, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976).

30. *Stroud v. Grace,* 606 A.2d at 89.

31. *Zirn v. VLI Corp.,* 681 A.2d at 1056. In *Zirn II,* this Court held, "in addition to the traditional duty to disclose all facts material to the proffered transaction, directors are under a fiduciary obligation to avoid misleading partial disclosures. The law of partial disclosure is likewise clear: Once defendants travel down the road of partial disclosure they have an obligation to provide the stockholders with an accurate, full and fair characterization of those historic events." (internal quotations omitted).

32. *See Zirn v. VLI Corp.,* 681 A.2d at 1062 ("a good faith erroneous judgment as to the proper scope or content of required disclosure implicates the duty of care rather than the duty of loyalty."); *Arnold v. Society for Savings Bancorp,* 650 A.2d at 1287–88 & n. 36.

33. Securities Act of 1933, 15 USCA § 77a (1933); Securities Act of 1934, 15 USCA § 78a (1934).

34. *See* Roger J. Dennis and Patrick J. Ryan, *State Corporate and Federal Securities Law: Dual Regulation in a Federal System,* 22 Publius: The J. of Federalism 21 (Winter 1992).

adopted a 'basic philosophy of disclosure.'"[35] Accordingly, this Court has held that there is "no legitimate basis to create a new cause of action which would replicate, by state decisional law, the provisions of ... the 1934 Act."[36] In deference to the panoply of federal protections that are available to investors in connection with the purchase or sale of securities of Delaware corporations, this Court has decided not to recognize a state common law cause of action against the directors of Delaware corporations for "fraud on the market."[37] Here, it is to be noted, the claim appears to be made by those who did not sell and, therefore, would not implicate federal securities laws which relate to the purchase or sale of securities.

■ The historic roles played by state and federal law in regulating corporate disclosures have been not only compatible but complementary.[38] That symbiotic relationship has been perpetuated by the recently enacted federal Securities Litigation Uniform Standards Act of 1998.[39] Although that statute by its terms does not apply to this case, the new statute will require securities class actions involving the purchase or sale of nationally traded securities, based upon false or misleading statements, to be brought exclusively in federal court under federal law. The 1998 Act, however, contains two important exceptions:[40] the first provides that an "exclusively derivative action brought by one or more shareholders on behalf of a corporation" is not preempted; the second preserves the availability of state court class actions, where state law already provides that corporate directors have fiduciary disclosure obligations to shareholders.[41] These exceptions have become known as the "Delaware carve-outs."[42]

35. *Stroud v. Grace*, Del.Supr., 606 A.2d 75, 86 (1992). *See, e.g.*, Randall S. Thomas & Catherine T. Dixon, *Aranow & Einhorn on Proxy Contests for Corporation Control*, § 21.02 (3d ed.1998).

36. *Arnold v. Society for Savings Bancorp, Inc.*, Del.Supr., 678 A.2d 533, 539 (1996).

37. *Gaffin v. Teledyne, Inc.*, Del.Supr., 611 A.2d 467, 472 (1992). *See Basic Incorporated v. Levinson*, 485 U.S. 224, 241–42, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988) (discussing the theory of fraud on the market).

38. *See Santa Fe Industries, Inc. v. Green*, 430 U.S. 462, 474–80, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977) (discussing state corporation law and the purpose of disclosure in federal securities law). *Cf.* Roberta Romano, *Empowering Investors: A Market Approach to Securities Regulation* 107 Yale L.J. 2359 (1998) ("advocating fundamental reform of the current strategy toward securities regulation by implementing a regulatory approach of competitive federalism.").

39. Securities Litigation Uniform Standards Act of 1998, Pub.L. No. 105–353, 112 Stat. 3227 (1998).·

40. Section 16(d) of the Act provides:
   (d) Preservation of Certain Actions.—
   (1) Actions under state law of state of incorporation.—
   (A) Actions preserved.—Notwithstanding subsection (b) or (c), a covered class action described in subparagraph (B) of this paragraph that is based upon the statutory or common law of the State in which the issuer is incorporated (in the case of a corporation) or organized (in the case of any other entity) may

be maintained in a State or Federal court by a private party.
   (B) Permissible actions.—A covered class action is described in this subparagraph if it involves—
   (i) the purchase or sale of securities by the issuer or an affiliate of the issuer exclusively from or to holders of equity securities of the issuer; or
   (ii) any recommendation, position, or other communication with respect to the sale of securities of the issuer that—
   (I) is made by or on behalf of the issuer or an affiliate of the issuer to holders of equity securities of the issuer; and
   (II) concerns decisions of those equity holders with respect to voting their securities, acting in response to a tender or exchange offer, or exercising dissenters' or appraisal rights.
Securities Litigation Uniform Standards Act of 1998, Pub.L. No. 105–353, § 16(d) 112 Stat. 3227 (1998).

41. *See, e.g., Zirn v. VLI Corp.*, 621 A.2d 773; *Zirn v. VLI Corp.*, 681 A.2d at 1060–61. *See also* Michael A. Perino, *Fraud and Federalism: Preempting Private State Securities Fraud Causes of Action*, 50 Stan. L.Rev. 273 (1998).

42. The Senate Committee Report on the Act is instructive. It states, in part:
   The Committee is keenly aware of the importance of state corporate law, specifically those states that have laws that establish a fiduciary duty of disclosure. It is not the intent of the Committee in adopting this legislation to interfere with state law regarding the duties and performance of an issuer's directors or officers in connection with a purchase or sale of secu-

### State Common Law
### Shareholder Remedy In Nonaction Context

Delaware law also protects shareholders who receive false communications from directors even in the absence of a request for shareholder action. When the directors are not seeking shareholder action, but are deliberately misinforming shareholders about the business of the corporation, either directly or by a public statement, there is a violation of fiduciary duty. That violation may result in a derivative claim on behalf of the corporation or a cause of action for damages.[43] There may also be a basis for equitable relief to remedy the violation.

### Complaint Properly Dismissed
### No Shareholder Action Requested

Here the complaint alleges (if true) an egregious violation of fiduciary duty by the directors in knowingly disseminating materially false information. Then it alleges that the corporation lost about $2 billion in value as a result. Then it merely claims that the action is brought on behalf of the named plaintiffs and the putative class. It is a *non sequitur* rather than a syllogism.

The allegation in paragraph 3 that the false disclosures resulted in the corporation losing virtually all its equity seems obliquely to claim an injury to the corporation. The plaintiffs, however, never expressly assert a derivative claim on behalf of the corporation or allege compliance with Court of Chancery Rule 23.1, which requires pre-suit demand or cognizable and particularized allegations that demand is excused.[44] If the plaintiffs intend to assert a derivative claim,[45] they should be permitted to replead to assert such a claim and any damage or equitable remedy sought on behalf of the corporation.[46] Likewise, the plaintiffs should have the opportunity to replead to assert any individual cause of action and articulate a remedy that is appropriate on behalf of the named plaintiffs individually, or a properly recognizable class consistent with Court of Chancery Rule 23, and our decision in *Gaffin.*[47]

The Court of Chancery properly dismissed the complaint before it against the individual director defendants, in the absence of well-pleaded allegations stating a derivative, class or individual cause of action and properly assertable remedy. Without a well-pleaded allegation in the complaint for a breach of

rities by the issuer or an affiliate from current shareholders or communicating with existing shareholders with respect to voting their shares, acting in response to a tender or exchange offer, or exercising dissenters' or appraisal rights.
S. Rep. No. 105–182, at 11–12 (May 4, 1998). We need not decide at this time, however, whether this new Act will have any effect on this litigation if plaintiffs elect to replead. See Section (c) of the Act:
  (c) Applicability.—The amendments made by this section shall not affect or apply to any action commenced before and pending on the date of enactment of this Act.

43. *See Zirn v. VLI Corp.,* 681 A.2d at 1060–61.

44. It seems that plaintiffs have attempted to allege the basis for demand excusal by the very nature of the central claim that the directors knowingly misstated the company's financial condition, thus seemingly taking this case out of the business judgment rule because all the directors are alleged to be implicated in the wrongdoing.

45. This will require an articulation of the classic "direct v. derivative" theory. *See Grimes v. Don-*

*ald,* Del.Supr., 673 A.2d 1207 (1996) (distinguishing individual and derivative actions).

46. We express no opinion whether equitable remedies such as injunctive relief, judicial removal of directors or disqualification from directorship could be asserted here. No such equitable relief has been sought in the current complaint. *See* Randall S. Thomas & Catherine T. Dixon, *Aranow & Einhorn on Proxy Contests for Corporate Control,* § 19.01 (3d ed.1998).

47. *Gaffin v. Teledyne, Inc.,* 611 A.2d 467, 474 (1992) ("A class action may not be maintained in a purely common law or equitable fraud case since individual questions of law or fact, particularly as to the element of justifiable reliance, will inevitably predominate over common questions of law or fact."). *See Barnes v.. American Tobacco Co.,* 3rd Cir., 161 F.3d 127 (1998). *Broussard v. Meineke Discount Muffler Shops, Inc.,* 4th Cir., 155 F.3d 331 (1998). *Cimino v. Raymark Industries, Inc.,* 5th Cir., 151 F.3d 297 (1998). *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). *See also* Donald J. Wolfe and Michael A. Pittenger, *Corporate and Commercial Practice in the Delaware Court of Chancery* § 9–3 (1998).

fiduciary duty, there can be no claim for aiding and abetting such a breach.[48] Accordingly, the plaintiffs' aiding and abetting claim against KPMG was also properly dismissed.

 Nevertheless, we disagree with the Court of Chancery's holding that such a claim cannot be articulated on these facts. The plaintiffs should have been permitted to amend their complaint, if possible, to state a properly cognizable cause of action against the individual defendants and KPMG. Consequently, the Court of Chancery should have dismissed the complaint *without* prejudice.

### Conclusion

The judgment of the Court of Chancery to dismiss the complaint is affirmed. The judgment to dismiss the complaint with prejudice is reversed. This matter is remanded for further proceedings in accordance with this opinion.

---

48. *In re Santa Fe Pacific Corp. Shareholder Litig.,* Del. Supr., 669 A.2d 59 (1995). *Cf.* Lewis B. Lowenfels and Alan R. Bromberg, *Liabilities of Lawyers and Accountants Under Rule 10(b)–5,* 53 Bus. Law. 1157 (1998).