**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| ALBERT GOODMAN,<br>*Plaintiff-Appellee*,<br><br>v.<br><br>BERT DOHMEN,<br>*Defendant-Appellant.* | No. 17-56330<br><br>D.C. No.<br>2:15-cv-00020-FFM<br><br>ORDER CERTIFYING A<br>QUESTION OF LAW<br>PURSUANT TO<br>DELAWARE SUPREME<br>COURT RULE 41 |

Filed September 20, 2019

Before: Johnnie B. Rawlinson and Mary H. Murguia, Circuit Judges, and James Rodney Gilstrap,* District Judge.

Order

---

* The Honorable James Rodney Gilstrap, United States District Judge for the Eastern District of Texas, sitting by designation.

## SUMMARY**

### Certified Question to the Delaware Supreme Court

The panel certified the following question of state law to the Supreme Court of the State of Delaware:

> In a Delaware limited partnership, does a general partner's request to a limited partner for a one-time capital contribution constitute a request for "limited-partner action" such that the general partner has a duty of disclosure, and, if the general partner fails to disclose material information in connection with the request, may the limited partner prevail on a breach-of-fiduciary-duty claim without proving reliance and causation?

### COUNSEL

Andrew B. Holmes and Matthew D. Taylor, Holmes Taylor Scott & Jones LLP, Los Angeles, California, for Defendant-Appellant.

Jeffrey Engerman, Law Offices of Jeffrey C. Engerman PC, Los Alamitos, California, for Plaintiff-Appellee.

---

** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## ORDER

For the reasons explained in the certificate below, we find that this case involves an important issue of Delaware law, which Delaware courts have yet to resolve. Therefore, we respectfully certify a question of law to the Supreme Court of the State of Delaware. *See* Del. Sup. Ct. R. 41.

The Clerk of this Court is directed to file in the Supreme Court of Delaware six certified copies of this certificate and provide copies of the record if requested. This case is withdrawn from submission and stayed pending final action by the Supreme Court of Delaware. The Clerk is directed to administratively close this docket pending further order. The parties shall notify this Court within 14 days of the Supreme Court of Delaware's acceptance or rejection of certification, and, if certification is accepted, within 14 days of the issuance of a decision.[1]

## CERTIFICATE OF QUESTION OF LAW

### (1) The nature and stage of the proceedings are:

This is a Delaware limited partnership breach-of-fiduciary-duty case. Albert Goodman, plaintiff-appellee, sued Bert Dohmen, defendant-appellant, alleging a breach of the duty of disclosure in connection with a request for limited-partner action. The district court held a bench trial, found Dohmen liable, and awarded Goodman monetary damages. Dohmen appealed, arguing, inter alia, that his duty of disclosure was not triggered because there was no request

---

[1] In a memorandum disposition filed concurrently herewith, we reject each of Dohmen's arguments that are not related to the certified issue.

for limited-partner action within the meaning of Delaware law. The appeal was argued and submitted on April 11, 2019, in Pasadena, California.

**(2) The following facts are undisputed:[2]**

Bert Dohmen is well known in the financial-services industry for his newsletters, which analyze financial markets and world economies. Dohmen had never created or managed a hedge fund until the events that gave rise to this case. Albert Goodman is a wealthy investor who knew of Dohmen because of his newsletters. The two met and became friends in 1999. Goodman had never invested in a hedge fund until the events that gave rise to this case.

In 2010, Dohmen decided to start a hedge fund. He formed the Croesus Fund, L.P. (the "Fund") as a Delaware limited partnership. Dohmen also formed Macro Wave Management, LLC to serve as the Fund's general partner. Macro Wave had exclusive control and management of the Fund, and Dohmen, in turn, was the sole member and manager of Macro Wave. Under the Fund's limited partnership agreement, investors in the Fund became limited partners.

In September 2011, Dohmen emailed Goodman, asking Goodman to invest in the Fund. Goodman agreed and signed a Fund subscription agreement shortly thereafter. On November 14, 2011, Goodman made his first $500,000 investment in the Fund (the "First Investment"). By the date of the First Investment, Dohmen had not made any concrete

---

[2] We accept the district court's factual findings following a bench trial absent clear error. *See United States v. Temkin*, 797 F.3d 682, 688 (9th Cir. 2015). The district court made these relevant factual findings, which we accept and treat as undisputed.

representations regarding whether other investors had joined the Fund. In fact, Dohmen had disclosed that he had only spoken with two people about the Fund at that point. In November 2011, Dohmen invested $200,000 of his own money in the Fund.

After Goodman made the First Investment, Goodman specifically inquired about other investors. On November 20, 2011, Dohmen made the following statements in an email: "We have not yet officially announced the start of the fund. You are one of the few who knows it exists. *There are several other close friends I told about the fund that are now liquidating some assets in order to participate*." Goodman understood the italicized statement to mean that more investors were coming in, which was important to Goodman. But, in fact, no friends of Dohmen's were liquidating assets to invest in the Fund, and Dohmen was well aware of this.

On November 26, 2011, Goodman again inquired as to "how big [the Fund] will be." Dohmen replied:

> Re the question of 'how big it will be,' I can only say that it will probably not be very big, depending on how it is defined. . . . Until we get a good track record, I only want investors I know, or who have been referred by friends, and that I have spoken to. They will all be 'accredited investors.' My first goal is to get to 20–30 million. If the fund does well, perhaps we can get to 100 mio by end of 2012. Those are my parameters right now, which of course can always change depending on conditions. We haven't even announced the fund yet, officially. Only a few of my good friends know about it.

Goodman wired another $500,000 on December 9, 2011 (the "Second Investment"), but Goodman continued to ask about other investors. On December 13, Dohmen stated that "[p]ersonal friends that have expressed interest are now reviewing the documents." This was knowingly false. The Second Investment was invested in the Fund on December 14, 2011. Dohmen contacted five people other than Goodman regarding the Fund, but none committed to investing.

On May 14, 2012, Dohmen informed Goodman for the first time that there were only two investors in the Fund. Goodman was shocked, and Dohmen offered to allow Goodman to withdraw his investments. Goodman did not withdraw.

As of June 30, 2012—when Goodman could have withdrawn—the net asset value ("NAV") of the Fund was $804,021.26. By November 5, 2012, the NAV was down to about $500,000, and at the end of December 2012, the NAV was about $357,000. In July 2014, the NAV was down to $100,000. Any remaining NAV has been used by Dohmen to pay for this litigation. Goodman has not received any portion of his investment back.[3]

In January 2015, Goodman brought suit alleging, inter alia, that Dohmen breached his fiduciary duty of disclosure by failing to disclose that there were only two investors in the Fund and affirmatively misleading Goodman on this point. The district court held a bench trial and found for Goodman on the fiduciary-duty claim, reasoning that Dohmen's November 20, 2011, email contained a material

---

[3] Goodman also paid about $30,000 in Fund administrative fees and costs, startup costs, and various other expenses.

misrepresentation made in connection with Dohmen's request for Goodman to take discretionary limited-partner action. Because the misrepresentation related to a request for limited-partner action, the district court found that the relaxed standard from *Malone v. Brincat*, 722 A.2d 5, 12 (Del. 1998), applied, and Goodman did not have to prove reliance or causation.

In calculating Goodman's damages, the district court awarded the lost value of the Second Investment only—because Goodman made the First Investment before Dohmen's misrepresentation. The damages award did not include losses incurred after June 30, 2012, the date on which Goodman could have mitigated his damages by withdrawing his investments. Dohmen appealed, arguing that his duty of disclosure was not triggered, and Goodman was required to prove causation, because there was no request for limited-partner action.

**(3) The question of law set forth below should be certified to the Supreme Court of the State of Delaware for the following reasons:**

"A claim for breach of fiduciary duty requires proof of two elements: (1) that a fiduciary duty existed and (2) that the defendant breached that duty." *Beard Research, Inc. v. Kates*, 8 A.3d 573, 601 (Del. Ch.), *aff'd sub nom. ASDI, Inc. v. Beard Research, Inc.*, 11 A.3d 749 (Del. 2010). The district court found that Dohmen, as the sole member of Macro Wave and the exclusive controller of the Fund, owed fiduciary duties to Goodman, as the Fund's limited partner. Dohmen does not challenge this finding on appeal.

A general partner's duty of loyalty generally "parallels that of a corporation's director." *Davenport Grp. MG, L.P. v. Strategic Inv. Partners, Inc.*, 685 A.2d 715, 722 (Del. Ch.

1996). In the corporate context, a director has a "duty of disclosure," which arises from the duties of care and loyalty. *Pfeffer v. Redstone*, 965 A.2d 676, 684 (Del. 2009) ("The duty of disclosure is not an independent duty, but derives from the duties of care and loyalty."); *see also Lonergan v. EPE Holdings, LLC*, 5 A.3d 1008, 1023 (Del. Ch. 2010) (finding that general partners owe the same "duty of full disclosure" in the limited-partnership context). The duty of disclosure requires a general partner to "disclose fully and fairly all material information within the [general partner's] control when [he] seeks [limited-partner] action." *Arnold v. Soc'y for Sav. Bancorp, Inc.*, 650 A.2d 1270, 1277 (Del. 1994) (citation omitted). General partners breach their duty of disclosure by making materially false statements, omitting material facts, or making partial disclosures that are materially misleading. *Pfeffer*, 965 A.2d at 684.[4]

Delaware law distinguishes between disclosures made "in connection with a request for [limited-partner] action" and disclosures made outside of this context. *Malone*, 722 A.2d at 12. When a general partner makes a misleading statement or omission in connection with a request for limited-partner action, the plaintiff need not prove reliance, causation, or actual damages. *Id.* Instead, the plaintiff simply must prove that the alleged omission or misrepresentation was "material" to the action being sought. *Id.*

Here, the district court found that Dohmen's misleading November 20, 2011, statement was made in connection with a request for limited-partner action. Specifically, Dohmen

---

[4] Although many of the cases cited herein reference "shareholder action" or "stockholder action," we use those terms interchangeably with "limited-partner action" because corporate directors and general partners owe the same duty of disclosure.

was requesting that Goodman invest additional capital. Therefore, the district court found that *Malone*'s relaxed "materiality" standard applied, and Goodman did not have to prove causation. This conclusion was essential to Goodman's success. The district court found that Goodman could not prove causation, if required, because Goodman could not show "that the lost investment value was proximately caused by there being only two investors in the Fund"—*i.e.*, loss causation. *See Vichi v. Koninklijke Philips Elecs., N.V.*, 85 A.3d 725, 816 (Del. Ch. 2014). Rather, Goodman lost his investment because of market forces and Dohmen's trading decisions. Therefore, the dispositive issue in this appeal is whether the district court correctly held that Dohmen's misrepresentation was made *in connection with a request for limited-partner action* such that *Malone* applies.

We review the district court's legal conclusions de novo. *Temkin*, 797 F.3d at 688. Looking to Delaware law, as we must, there is no clear indication as to whether the request in this case—a general partner's request to a limited partner for additional capital—constitutes a request for limited-partner action that triggers the duty of disclosure. Most cases suggest that limited-partner action is narrowly defined as actions that Delaware law or the partnership organizational documents identify as requiring a discretionary limited-partner vote. *See Metro Commc'n Corp. BVI v. Advanced Mobilecomm Techs. Inc.*, 854 A.2d 121, 156 (Del. Ch. 2004) (defining requests for shareholder action narrowly as communications asking shareholders "to make a discretionary decision—such as whether to grant a proxy, to vote yes or no on a particular matter, or to seek appraisal or accept merger consideration"); *Jackson Nat. Life Ins. Co. v. Kennedy*, 741 A.2d 377, 388 (Del. Ch. 1999) ("Since neither the Delaware General Corporation Law nor Section II.B of the Certificate expressly provided [the stockholder] with the right to vote

on [the corporation's] sale of assets to Fort James, [the director of the corporation] had no fiduciary obligation to disclose that transaction to [the stockholder]."). However, at least one case has interpreted limited-partner action more broadly. *See Alessi v. Beracha*, 849 A.2d 939, 944 (Del. Ch. 2004) (holding that there was a request for shareholder action where the corporation announced a program allowing minority shareholders to buy or sell shares for a reduced processing fee).

Moreover, we note that none of the above-cited cases actually addresses the partnership context. And while corporate directors and general partners have parallel duties of disclosure, they are not perfectly analogous. The types of discretionary actions regularly taken by shareholders may be distinct from those taken by limited partners. And there may be policy reasons for interpreting limited-partner action more broadly or narrowly than shareholder action.

These are purely state-law issues, which have not been addressed by Delaware courts. The issues are of statewide importance because allowing Goodman's claim to prevail under *Malone*'s relaxed "materiality" standard might "threaten to convert the duty to disclose all material facts in connection with a discretionary vote or tender into a pervasive, across-the-board rule governing all entity disclosures, because entity owners can usually connect any disclosure to a decision they might make[.]" *Metro Commc'n Corp.*, 854 A.2d at 158; *see also In re Wayport, Inc. Litig.*, 76 A.3d 296, 314–15 (Del. Ch. 2013) (suggesting that plaintiffs may be required to prove proximate causation even when there is a request for shareholder action); *In re Orchard Enterprises, Inc. Stockholder Litig.*, 88 A.3d 1, 53 (Del. Ch. 2014) (same).

**(4) The important and urgent reasons for an immediate determination by the Supreme Court of the question certified are:**

As noted above, there are important and urgent reasons for an immediate determination by the Supreme Court of Delaware. The issue of what constitutes limited-partner action for purposes of the duty of disclosure is a purely state-law issue that implicates important Delaware policy considerations. The issue has not been addressed by Delaware courts, but it will be determinative in this case, and it is likely to recur in federal courts. A ruling from the Supreme Court of Delaware on the certified issue would ensure accurate application of Delaware law in other jurisdictions.

**(5) If certification is accepted, it is recommended that defendant-appellant Bert Dohmen be appellant for purposes of the caption on any filings in the Supreme Court of Delaware and that plaintiff-appellee Albert Goodman be appellee for purposes of the caption on any filings in the Supreme Court of Delaware with respect to the question certified.**   Pursuant to Delaware Supreme Court Rule 41(c)(v), we recommend that defendant-appellant file his  brief first, followed by plaintiff-appellee.

**NOW, THEREFORE, IT IS ORDERED** that the following question of law is certified to the Supreme Court of the State of Delaware for disposition in accordance with Rule 41 of the Supreme Court:

> In a Delaware limited partnership, does a general partner's request to a limited partner for a one-time capital contribution constitute a request for "limited-partner action" such that the general partner has a duty of full

disclosure, and, if the general partner fails to disclose material information in connection with the request, may the limited partner prevail on a breach-of-fiduciary-duty claim without proving reliance and causation?

We respectfully request that the Supreme Court of Delaware resolve this state-law question of first impression, which will resolve the determinative issue in this case. Our phrasing of the question should not be construed to restrict the Supreme Court of Delaware's consideration of the issues involved in this case.