Mary E. McMULLIN, Plaintiff
below, Appellant,

v.

Walter F. BERAN, Anthony G. Fernandes, Mark L. Hazelwood, Alan R. Hirsig, John H. Kelley, Marie L. Knowles, James A. Middleton, Stephen R. Mut, Frank Savage, Marvin B. Schlanger, Walter J. Tusinski, Donald R. Voelte, Jr., Arco Chemical Company and Atlantic Richfield Company, Defendants below, Appellees.

No. 611, 1999.

Supreme Court of Delaware.

Submitted: Aug. 21, 2000.

Decided: Nov. 20, 2000.

**914**

Joseph A. Rosenthal, Esquire, of Rosenthal, Monhait, Gross & Goddess, P.A., Wilmington, Delaware, and Stanley D. Bernstein, Esquire (argued) and Abraham I. Katsman, Esquire, of Bernstein, Liebhard & Lifshitz, LLP, New York, New York, for appellant.

Jesse A. Finkelstein, Esquire (argued), Robert J. Stearn, Jr., Esquire and Srinivas M. Raju, Esquire, of Richards, Layton & Finger, Wilmington, Delaware, and John Sullivan, Esquire, of Fried, Frank, Harris, Shriver & Jacobson, New York, New York, for individual appellees.

A. Gilchrist Sparks, III, Esquire (argued), Alan J. Stone, Esquire and Jessica Zeldin, Esquire, of Morris, Nichols, Arsht & Tunnell, Wilmington, Delaware, for appellee, Atlantic Richfield Company.

Before VEASEY, Chief Justice, WALSH and HOLLAND, Justices.

HOLLAND, Justice.

The plaintiff-appellant, Mary E. McMullin, a purported shareholder of ARCO Chemical Company ("Chemical"), filed this putative class action against Chemical, its directors (the "Individual Defendants" or the "Chemical Directors"), Atlantic Richfield Company ("ARCO"), Lyondell Petrochemical Company ("Lyondell"), and Lyondell's subsidiary, Lyondell Acquisition Corporation. ARCO owned 80% of Chemical's common stock. The Amended Complaint alleged that the Individual Defendants and ARCO, aided and abetted by Lyondell, breached their fiduciary duties in connection with Lyondell's acquisition of Chemical's shares at $57.75 per share (the "Transaction").

All defendants filed motions to dismiss the Amended Complaint pursuant to Court of Chancery Rule 12(b)(6). McMullin voluntarily dismissed Chemical, Lyondell and Lyondell Acquisition Corporation from this action. The Court of Chancery granted the remaining defendants' motions to dismiss.

McMullin has raised three issues on appeal. Her first contention is that ARCO and the Chemical Directors were obligated to maximize value for all Chemical shareholders in the sale of the company to Lyondell. Thus, according to McMullin, the Court of Chancery erred in holding that defendants' *Revlon*[1] duty to maximize shareholder value was not "implicated" in this case. McMullin's second contention is that Chemical's Directors violated their fiduciary duties to manage the sale of Chemical by delegating control of the sale process to ARCO. According to McMullin, the Court of Chancery erred in holding that Chemical's Directors were justified in delegating their managerial responsibilities to ARCO simply because ARCO owned 80% of Chemical and no

---

1. *Revlon, Inc. v. MacAndrews & Forbes Holdings, Inc.,* Del.Supr., 506 A.2d 173 (1986).

transaction could proceed without ARCO's approval. Finally, McMullin submits that the disclosure documents disseminated to Chemical's minority shareholders failed to disclose any qualitative or quantitative information about the value of the company to inform the shareholders' decision whether to tender their shares to Lyondell or seek appraisal in the ensuing merger. According to McMullin, the Court of Chancery erred in holding that the Chemical Directors had fulfilled their disclosure obligations to Chemical's minority shareholders by merely furnishing them the conclusory opinion of an investment banker that the transaction was fair to the minority shareholders from a financial point of view.

We have concluded that the Court of Chancery should not have granted the remaining defendant's motion to dismiss McMullin's Amended Complaint. Therefore, the judgment must be reversed.

### Facts [2]

McMullin is a purported former owner of Chemical common stock. Chemical was, until its purchase by Lyondell, a Delaware corporation with its principal place of business in Newtown Square, Pennsylvania. Chemical is a leading worldwide manufacturer and marketer of chemicals.

ARCO is a Delaware corporation with its principal place of business in Los Angeles, California. ARCO is an integrated oil and gas company. Before the Transaction, ARCO owned 80 million shares of Chemical's common stock, representing 80.1% of Chemical's outstanding shares.

Lyondell is a Delaware corporation based in Texas. Lyondell Acquisition Corporation is a wholly owned subsidiary of Lyondell formed to accomplish the Transaction. The Individual Defendants are former members of the board of directors of Chemical. At the time of the Transaction, one of these individuals was

the chief financial officer and executive vice president of ARCO, one was a senior vice president of ARCO, four were senior vice presidents of ARCO, two were previously senior executives with various other ARCO subsidiaries, and one was the president of Chemical. The remaining three directors were not officers or employees of either ARCO or Chemical.

On February 17, 1998, ARCO received an unsolicited call from Lyondell in which Lyondell expressed an interest in acquiring Chemical. From February to June 1998, ARCO and its financial advisor, Salomon Smith Barney ("Salomon"), contacted a number of entities to gauge their interest in participating in a bidding process.

In mid-March, ARCO informed Chemical's Directors that it "had received indications of interest for an acquisition of all of the outstanding shares of the Common Stock." The Chemical Directors authorized ARCO to explore the sale of the *entire* company.

On May 15, Lyondell proposed to purchase all outstanding shares of Chemical in a cash tender offer at a price of $51 per share. Lyondell also proposed a second-step merger in which stockholders could elect to receive either $51 per share in cash for their stock or Lyondell common stock with a market value of $56 per share, subject to a 15.5 million cap on the number of Lyondell shares to be exchanged. Because of this cap, only a portion of the shares of Chemical would have been eligible to receive Lyondell shares rather than cash. ARCO rejected this price as inadequate and on June 4, Lyondell raised its cash offer price for all shares of Chemical to $56.60 per share. ARCO rejected the new offer.

On June 13, 1998, Lyondell made yet another revised bid, offering $57.75 in cash per share to purchase all of Chemical's outstanding stock. After negotiations, on

**2.** This factual recitation is taken substantially from the defendant-appellee's Answering Brief. The allegations in the Amended Complaint are accepted by defendants as true solely for the purpose of their motion to dismiss.

June 17, 1998, Lyondell submitted a merger agreement and other related contracts. The Lyondell proposal contemplated a tender offer to purchase all outstanding shares of the Company for $57.75 per share, a commitment from ARCO to tender its 80 million shares of Chemical at the same $57.75 price paid to the minority, and a second-step merger whereby all untendered shares would be cashed out at the same time.

On June 18, 1998, Chemical's Board of Directors met to consider the Lyondell proposal. Representatives of ARCO and Salomon made presentations regarding the terms of the Lyondell proposal and the sale process. Merrill Lynch, Chemical's financial advisor, made a presentation and expressed its opinion that $57.75 per share was fair to Chemical's stockholders, other than ARCO, from a financial point of view. Chemical's Board of Directors unanimously approved the Transaction.

On June 24, 1998, Lyondell commenced its Tender Offer. The next day, Chemical filed its Schedule 14D–9. On July 23, 1998, the Tender Offer was completed, with 99% of Chemical's shares tendering to Lyondell. Shortly thereafter, Lyondell completed the second-step merger. None of the former Chemical shareholders sought to exercise their rights of appraisal.

### Standard of Review

■ In reviewing the dismissal of a complaint under Rule 12(b)(6), the standard of appellate review is de novo.[3] This Court, like the trial court, "must determine whether it appears with reasonable certainty that, under any set of facts that could be proven to support the claims asserted, the plaintiffs would not be entitled to relief."[4] That determination, by this Court and the trial court, is generally limited to the factual allegations contained in the complaint.[5] On appeal, those alleged facts must be taken as true and all inferences therefrom are viewed in a light most favorable to the plaintiff.[6]

### Business Judgment Rule

■ One of the fundamental principles of the Delaware General Corporation Law statute is that the business affairs of a corporation are managed by or under the direction of its board of directors.[7] The business judgment rule is a corollary common law precept to this statutory provision. The business judgment rule, therefore, combines a judicial acknowledgment of the managerial prerogatives that are vested in the directors of a Delaware corporation by statute with a judicial recognition that the directors are acting as fiduciaries in discharging their statutory responsibilities to the corporation and its shareholders.[8] The business judgment rule "is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company."[9]

■ The business judgment rule "operates as both a procedural guide for liti-

**3.** *In re Santa Fe Pac. Corp. Shareholder Litig.,* Del.Supr., 669 A.2d 59, 70 (1995).

**4.** *In re Tri–Star Pictures, Inc., Litig.,* Del. Supr., 634 A.2d 319, 326 (1993) (citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

**5.** *Vanderbilt Income and Growth Assocs. v. Arvida/JMB Managers, Inc.,* Del.Supr., 691 A.2d 609, 612–13 (1996); *see also In re Santa Fe Pac. Corp. Shareholder Litig.,* 669 A.2d at 70.

**6.** *In re Tri–Star Pictures, Inc., Litig.,* 634 A.2d at 326.

**7.** 8 *Del. C.* § 141(a); *Smith v. Van Gorkom,* Del.Supr., 488 A.2d 858, 872 (1985); *Aronson v. Lewis,* Del.Supr., 473 A.2d 805 (1984).

**8.** *Aronson v. Lewis,* 473 A.2d at 811; *see also Brehm v. Eisner,* Del.Supr., 746 A.2d 244, 264 n. 66 (2000); *see also Zapata Corp. v. Maldonado,* Del.Supr., 430 A.2d 779, 782 (1981).

**9.** *Aronson v. Lewis,* 473 A.2d at 812; *see also Brehm v. Eisner,* 746 A.2d at 264 n. 66.

gants and a substantive rule of law." [10] Procedurally, the initial burden is on the shareholder plaintiff to rebut the presumption of the business judgment rule. [11] To meet that burden, the shareholder plaintiff must effectively provide evidence that the defendant board of directors, in reaching its challenged decision, breached any *one* of its "triad of fiduciary duties, loyalty, good faith or due care." [12] Substantively, "if the shareholder plaintiff fails to meet that evidentiary burden, the business judgment rule attaches" and operates to protect the individual director-defendants from personal liability for making the board decision at issue. [13]

"Burden shifting does not create *per se* liability on the part of the directors." [14] It is a procedure by which the Delaware judiciary determines the standard of review that is applicable to measure the board of directors' conduct. [15] If the shareholder plaintiff succeeds in rebutting the presumption of the business judgment rule, the burden shifts to the defendant directors to prove the "entire fairness" of the transaction. [16]

### *Motion to Dismiss*

The fiduciary responsibilities of the Chemical Directors' with regard to the proposed Lyondell Transaction emanate from their statutory duty under 8 *Del. C.* § 251 "to act in an informed and deliberate manner in determining whether to approve an agreement of merger before submitting the proposal to the stockholders." [17] The Chemical Directors were obliged to make an informed, deliberate judgment, in good faith, that the merger terms, including the price, were fair. They were also obliged to disclose with entire candor all material facts concerning the merger, so that the minority stockholders would be able to make an informed decision whether to accept the tender offer price or to seek judicial remedies such as appraisal or an injunction. [18]

In examining the Chemical Directors' motion to dismiss McMullin's Amended Complaint, the Court of Chancery was required to conduct a two-step analysis: first, to take the facts alleged as true and view all inferences from those facts in the light most favorable to the plaintiff; and, second, to determine whether with reasonable certainty, under any set of facts that could be proven, the plaintiff would succeed in rebutting the presumption of the business judgment rule. [19] If McMullin's Amended Complaint passed judicial muster under that two-step analysis,

**10.** *Cinerama, Inc. v. Technicolor, Inc.,* Del. Supr., 663 A.2d 1156, 1162 (1995) (*quoting Citron v. Fairchild Camera & Instrument Corp.,* Del.Supr., 569 A.2d 53, 64 (1989)).

**11.** *Cinerama, Inc. v. Technicolor, Inc.,* 663 A.2d at 1162; *see also Citron v. Fairchild Camera & Instrument Corp.,* 569 A.2d at 64; *Smith v. Van Gorkom,* 488 A.2d at 872.

**12.** *Emerald Partners v. Berlin,* Del.Supr., 726 A.2d 1215, 1221 (1999); *Cinerama, Inc. v. Technicolor, Inc.,* 663 A.2d at 1162–63; *In re Tri–Star Pictures, Inc., Litig.,* Del.Supr., 634 A.2d 319, 333 (1993).

**13.** *Cede & Co. v. Technicolor, Inc.,* Del.Supr., 634 A.2d 345, 361 (1993) (*"Cede II"*); *Citron v. Fairchild Camera & Instrument Corp.,* 569 A.2d at 64; *Smith v. Van Gorkom,* 488 A.2d at 873; *Revlon, Inc. v. MacAndrews & Forbes Holdings, Inc.,* Del.Supr., 506 A.2d 173, 180 n. 10 (1986).

**14.** *Cinerama, Inc. v. Technicolor, Inc.,* 663 A.2d at 1162; *Cede II,* 634 A.2d at 361.

**15.** *Cinerama, Inc. v. Technicolor, Inc.,* 663 A.2d at 1162; *Cede II,* 634 A.2d at 361.

**16.** *Emerald Partners v. Berlin,* 726 A.2d at 1222; *Cede II,* 634 A.2d at 361.

**17.** *Smith v. Van Gorkom,* Del.Supr., 488 A.2d 858, 873 (1985); *Sinclair Oil Corp. v. Levien,* Del.Supr., 280 A.2d 717, 721–22 (1971).

**18.** *Skeen v. Jo–Ann Stores, Inc.,* Del.Supr., 750 A.2d 1170 (2000); *Emerald Partners v. Berlin,* Del.Supr., 726 A.2d 1215, 1223 (1999); *Malone v. Brincat,* Del.Supr., 722 A.2d 5, 10 (1998).

**19.** *Vanderbilt Income and Growth Assocs. v. Arvida/JMB Managers, Inc.,* Del.Supr., 691 A.2d 609, 612 (1996).

the motion to dismiss should have been denied. If the Amended Complaint failed to withstand that threshold level of judicial scrutiny, the motion to dismiss was properly granted because, unless effectively pled factual allegations in the shareholder plaintiff's Amended Complaint successfully rebut the procedural presumption of the business judgment rule, the Chemical Directors would be protected by the substantive operation of the business judgment rule.[20]

### Fiduciary Responsibility Is Contextually Specific

■■■ This case relates to a complete sale of Chemical. The Chemical Board owed fiduciary duties of care, loyalty and good faith to all Chemical shareholders in recommending a sale of the entire corporation.[21] In the context of an entire sale, and in the absence of an extant majority shareholder, the directors must focus on one primary objective—to secure the transaction offering the best value reasonably available for all stockholders.[22] In pursuing that objective, the directors must be especially diligent[23] "and they must exercise their fiduciary duties to further that end."[24]

■■■ In the absence of a majority shareholder, this Court has described some of the methods by which a board can fulfill its fiduciary obligation to *seek* the best value reasonably available to the stockholders when the *board* is engaged in the process of selling the corporation.[25] Those methods may include conducting an auction, canvassing the market, etc.[26] There is, however, "no single blueprint" that directors of Delaware corporations must follow.[27]

■■■ The statutory duties and common law fiduciary responsibilities that directors of a Delaware corporation are required to discharge depends upon the specific context that gives occasion to the board's exercise of its business judgment.[28] Whenever the board is deciding whether to approve a proposed "all shares" tender offer that is to be followed by a cash-out merger, the decision constitutes a final-stage transaction for all shareholders.[29] Consequently, the time frame for the board's analysis is immediate value maximization for all shareholders.[30]

■■■ The questions presented in this case require an examination of the

20. *Cede II*, 634 A.2d at 361; *see also Cinerama, Inc. v. Technicolor, Inc.*, Del.Supr., 663 A.2d 1156, 1162–63 (1995).

21. *Barkan v. Amsted Industries, Inc.*, Del. Supr., 567 A.2d 1279, 1286 (1989). *Mills Acquisition Co. v. Macmillan, Inc.*, Del.Supr., 559 A.2d 1261, 1280 (1988).

22. *Paramount Communications v. QVC Network, Inc.*, Del.Supr., 637 A.2d 34, 44 (1993).

23. *Id.; see Citron v. Fairchild Camera & Instrument Corp.*, Del.Supr., 569 A.2d 53, 66 (1989) (discussing "a board's active and direct role in the sale process").

24. *Paramount Communications v. QVC Network, Inc.*, Del.Supr., 637 A.2d 34, 44 (1993); *Revlon, Inc. v. MacAndrews & Forbes Holdings, Inc.*, Del.Supr., 506 A.2d 173, 182 (1986) ("The duty of the board ... [is] the maximization of the company's value at a sale for the stockholders' benefit."); *Mills Acquisition Co. v. Macmillan, Inc.*, 559 A.2d at 1288 ("[I]n a sale of corporate control the responsibility of the directors is to get the highest value reasonably attainable for the shareholders."); *Barkan v. Amsted Industries*, Del.Supr., 567 A.2d 1279, 1286 (1989) ("[T]he board must act in a neutral manner to encourage the highest possible price for shareholders.").

25. *Paramount Communications Inc. v. QVC Network, Inc.*, 637 A.2d at 44 (*citing Barkan v. Amsted Indus.*, 567 A.2d at 1286–87).

26. *Id.*

27. *Id.; Barkan v. Amsted Industries*, 567 A.2d at 1286–87; *Citron v. Fairchild Camera & Instrument Corp.*, Del.Supr., 569 A.2d 53, 68 (1989); *Mills Acquisition Co. v. Macmillan, Inc.*, 559 A.2d at 1287.

28. *Mendel v. Carroll*, Del. Ch., 651 A.2d 297, 305 (1994).

29. *Id.* at 306.

30. *Id.* at 305.

Chemical Board's statutory duty and fiduciary responsibilities to minority shareholders in the specific context of evaluating a proposal for a sale of the entire corporation to a third party at the behest of the majority shareholder. When a board is presented with the majority shareholder's proposal to sell the entire corporation to a third party, the ultimate focus on value maximization is the same as if the board itself had decided to sell the corporation to a third party.[31] When the entire sale to a third-party is proposed, negotiated and timed by a majority shareholder, however, the board cannot realistically *seek* any alternative because the majority shareholder has the right to vote its shares in favor of the third-party transaction it proposed for the board's consideration.[32] Nevertheless, in such situations, the directors are obliged to make an informed and deliberate judgment, in good faith, about whether the sale to a third party that is being proposed by the majority shareholder will result in a maximization of value for the minority shareholders.[33]

In this case, because the minority shareholders of Chemical were powerless to outvote ARCO, they had only one decision to make: whether to accept the tender offer from Lyondell or to seek an appraisal value of their shares in the ensuing merger. Given ARCO's majority shareholder 80% voting power, under the circumstances of this case, the Chemical Directors did not have the ability to *act* on an informed basis to *secure* the best value reasonably available for all shareholders in any alternative to the third-party transaction with Lyondell that ARCO had negotiated.[34] The

Chemical Directors did, however, have the duty to act on an informed basis to independently ascertain how the merger consideration being offered in the third party Transaction with Lyondell compared to Chemical's value as a going concern.

As noted, a board of directors has a duty under 8 *Del. C.* § 251(b) to act in an informed and deliberate manner in determining whether to approve an agreement of merger before submitting the proposal to the stockholders. In the absence of a majority shareholder, we have held that directors "may not abdicate that duty by leaving to the shareholders alone the decision to approve or disapprove the agreement."[35] *A fortiori,* when the proposal to merge with a third party is negotiated by the majority shareholder, the board cannot abdicate that duty by leaving it to the shareholders alone to approve or disprove the merger agreement[36] because the majority shareholder's voting power makes the outcome a preordained conclusion. To paraphrase the Court of Chancery in a similar context and applying its holding to this case:

> [O]nce having assumed the position of directors of [Chemical], a corporation that had stockholders other than [ARCO], [the directors] become fiduciaries for the minority shareholders, with a concomitant affirmative duty to protect the interests of the minority, as well as the majority, stockholders. Thus, the [Chemical] Board, in carrying out its affirmative duty to protect the interests of the minority, could not abdicate its obligation to make an informed decision

**31.** *Id.*

**32.** *Bershad v. Curtiss–Wright Corp.,* Del. Supr, 535 A.2d 840, 845 (1987).

**33.** 8 *Del. C.* § 251; *see Paramount v. QVC Network, Inc.,* Del.Supr., 637 A.2d 34 (1994); *Sealy Mattress Co. of New Jersey v. Sealy, Inc.,* Del. Ch., 532 A.2d 1324, 1338 (1987).

**34.** *See Paramount Communications v. QVC Network, Inc.,* Del.Supr., 637 A.2d 34 (1994).

**35.** *See Paramount Communications, Inc. v. Time, Inc.,* Del.Supr., 571 A.2d 1140, 1142—43 n. 4 (1989) (*quoting Smith v. Van Gorkom,* Del.Supr., 488 A.2d 858, 873 (1985)). *See generally Aronson v. Lewis,* Del.Supr., 473 A.2d 805, 811–13 (1984). *See also Pogostin v. Rice,* Del.Supr., 480 A.2d 619 (1984).

**36.** *Sealy Mattress Co. of New Jersey v. Sealy, Inc.,* Del. Ch., 532 A.2d 1324, 1338 (1987).

on the fairness of the merger by simply deferring to the judgment of the controlling shareholder ... [37]

When a majority of a corporation's voting shares are owned by a single entity, there is a significant diminution in the voting power of the minority stockholders.[38] Consequently, minority stockholders must rely for protection on the fiduciary duties owed to them by the board of directors.[39] Under the circumstances presented in this case, although the Chemical Board could not effectively seek an alternative to the proposed Lyondell sale by auction or agreement, and had no fiduciary responsibility to engage in either futile exercise,[40] its ultimate statutory duties under Section 251 and attendant fiduciary obligations remained inviolable.

■ Effective representation of the financial interests of the minority shareholders imposed upon the Chemical Board an affirmative responsibility to protect those minority shareholders' interests. This responsibility required the Chemical Board to: first, conduct a critical assessment of the third-party Transaction with Lyondell that was proposed by the majority shareholder; and second, make an independent determination whether that transaction maximized value for all shareholders. The Chemical Directors had a duty to fulfill this obligation faithfully and with due care so that the minority shareholders would be able to make an informed decision about whether to accept the Lyondell Transaction tender offer price or to seek an appraisal of their shares.[41] McMullin's Amended Complaint alleges that these statutory duties and fiduciary responsibili-

ties were not discharged properly by the directors of Chemical.

### McMullin's Amended Complaint

■ McMullin does not dispute ARCO's right to sell its own 80% interest in Chemical for whatever consideration might have been acceptable to it, whether for cash or stock or a mixture of cash and stock. McMullin also acknowledges that this case does not involve a "change of control" of Chemical, as that concept has been described in the prior decisions of this Court.[42] The Amended Complaint does contend that the Chemical Board's recommendation to approve the Lyondell Transaction implicated the directors' ultimate fiduciary duty that was described in *Revlon* and its progeny[43]—to focus on whether shareholder value has been maximized. We agree with that contention because, rather than selling only its own 80% interest, ARCO negotiated for, with the Chemical Board's approval, the entire sale of Chemical to Lyondell.

The Amended Complaint would withstand a motion to dismiss if it successfully alleged facts that, if true, would rebut the procedural presumption of the business judgment rule. To do that, McMullin had to successfully allege that the Chemical Board had breached any *one* of its triad of fiduciary duties of care, loyalty or good faith. McMullin contends that the allegations in her Amended Complaint demonstrate that the Chemical Board breached both its duty of care and its duty of loyalty. If McMullin is correct with regard to either or both of her contentions, the

---

**37.** *Id.*

**38.** *Paramount Communications v. QVC Network, Inc.*, Del.Supr., 637 A.2d 34, 42 (1994).

**39.** *Id.* at 43.

**40.** *Bershad v. Curtiss–Wright Corp.*, Del.Supr., 535 A.2d 840, 845 (1987).

**41.** *Sealy Mattress Co. of New Jersey v. Sealy, Inc.*, Del. Ch., 532 A.2d 1324 (1987).

**42.** *See, e.g., Paramount Communications, Inc. v. QVC Network, Inc.*, Del.Supr., 637 A.2d 34 (1993); *Paramount Communications, Inc. v. Time, Inc.*, Del.Supr., 571 A.2d 1140 (1989); *Revlon, Inc. v. MacAndrews & Forbes Holdings, Inc.*, Del.Supr., 506 A.2d 173 (1986).

**43.** *See, e.g., Paramount Communications, Inc. v. QVC Network, Inc.*, Del.Supr., 637 A.2d 34 (1994).

Chemical Directors' motion to dismiss should have been denied.

## Care Allegations

Under 8 *Del C.* § 251, a director is required "to act in an informed and deliberate manner in determining whether to approve an agreement of merger before submitting the proposal to the stockholders."[44] A director's duty to exercise an informed business judgment implicates the duty of care.[45] Director liability for breaching the duty of care "is predicated upon concepts of gross negligence."[46]

McMullin's Amended Complaint alleges that ARCO initiated and timed the Transaction to benefit itself because ARCO needed cash to fund the $3.3 billion cash acquisition of Union Texas Petroleum Holdings that ARCO announced on May 4, 1998.[47] McMullin alleges that the Chemical Board authorized ARCO to unilaterally negotiate the merger agreement without establishing any procedural safeguards to protect the interests of the minority shareholders.[48] According to the Amended Complaint, ARCO not only conducted the negotiations but also placed its own cash restrictions on potential bidders.[49] McMullin alleges that ARCO gained financial advantage from the immediate all-cash Transaction with Lyondell, at the expense of the minority shareholders, by sacrificing some of the value of Chemical, which might have been realized in a differently timed or structured agreement.[50]

The Amended Complaint alleges that the Chemical Board met only once to con-

---

**44.** *Smith v. Van Gorkom,* Del.Supr., 488 A.2d 858, 873 (1985).

**45.** *Smith v. Van Gorkom,* 488 A.2d at 873.

**46.** *Aronson v. Lewis,* Del.Supr., 473 A.2d 805, 812 (1984); *Citron v. Fairchild Camera & Instrument Corp.,* Del.Supr., 569 A.2d 53, 66 (1989). *Smith v. Van Gorkom,* 488 A.2d at 873. *See Brehm v. Eisner,* Del.Supr., 746 A.2d 244, 259 (2000). *See also* Veasey & Manning, Codified Standard—Safe Harbor or Uncharted Reef? 35 Bus.Law. 919, 928 (1980).

**47.** Paragraph 20 of McMullin's Amended Complaint states:

On or about May 4, 1998, ARCO announced that it had agreed to acquire Union Texas Petroleum Holdings ("UTP") for $29 per share or $3.3 billion in cash. To fund the purchase without sacrificing its single-A credit rating, according to *Platt's Oilgram News,* 'ARCO said it will quickly move to sell $1–bil to $2–bil of non strategic assets. Analysts immediately suspected that probably meant ARCO's 82.3% stake in Chemical.'

**48.** Paragraph 26 of McMullin's Amended Complaint states:

In January 1998, Chemical's directors established a special committee of purportedly independent directors (the "Special Committee") to negotiate with ARCO regarding the proposed Secondary Offering/Repurchase Transaction. The Board failed, how-

ever, to authorize the Special Committee to protect and enhance the interests of the Company and its public shareholders in connection with the subsequent sale of the Company to Lyondell. Since the Special Committee had already been authorized to act on behalf of the Company and its public shareholders in connection with the Secondary Offering/Repurchase. Transaction, the Board's failure to empower the Special Committee to actively participate in the sale of the Company is inexplicable.

**49.** Paragraph 29 of McMullin's Amended Complaint states:

Specifically, the *Financial Times* reported on June 4, 1998, that ARCO said "other companies had shown an interest in buying all or part of its chemical assets, but none had been prepared to pay what it considered a high enough price, and *its 'strong preference for cash had excluded potential bidders wanting to offer only stock* (emphasis added).'

**50.** Paragraph 27 of McMullin's Amended Complaint states:

Additionally, the individual defendants relied upon ARCO and its financial advisor, Salomon Smith Barney ("SSB"), to conduct the solicitation of interested buyers and all negotiations for the sale of the Company, despite the fact that ARCO's need for cash and, as more fully described below, its insistence on an all-cash bid conflicted with the interests of the public shareholders to

sider the Transaction negotiated by ARCO with Lyondell. At that meeting, ARCO's financial advisor, Salomon Smith Barney, made a presentation to the Chemical Board regarding the terms of Lyondell's proposal and the sale process conducted by ARCO.[51] The Chemical Board approved the Transaction with Lyondell at that one meeting on the basis of the disclosures made to them by ARCO's financial advisor.

■ The business judgment rule is rebutted if the plaintiff shows that the directors failed to exercise due care in informing themselves before making their decision.[52] The imposition of time constraints on a board's decision-making process may compromise the integrity of its deliberative process.[53] History has demonstrated boards "that have failed to exercise due care are frequently boards that have been rushed." [54] The Amended Complaint alleges that on June 3, 1998, ARCO was asking the Chemical Board to repurchase some of its 80% holdings [55] and on June 18 was asking the Chemical board to sell the entire corporation to Lyondell.[56]

■ One can reasonably infer from the factual allegations in McMullin's Amended Complaint that the Chemical Board compromised its deliberative process by seeking to accommodate ARCO's immediate need for cash.[57] The Chemical Directors were obligated to determine whether the third-party Transaction with Lyondell that was being advanced by the majority shareholder, would maximize value for the minority shareholders in the sale of Chemical. The specific allegations contained in McMullin's Amended Complaint, if true, suggest that the directors of Chemical breached their duty of care by approving the merger with Lyondell without adequately informing themselves about the transaction and without determining whether the merger consideration equaled or exceeded Chemical's appraisal value as a going concern.

receive maximum consideration for their shares in a sale of the Company.

51. Paragraph 27 of McMullin's Amended Complaint states:

On June 3, 1998, *Bloomberg* reported that ARCO intended to reduce its stake in Chemical to 50 percent and to raise $2.15 billion by selling shares back to Chemical and to the public. At that time, the two companies anticipated ARCO would sell about 24 million of its 80 million shares to the public in a secondary offering and Chemical would spend up to $850 million to buy approximately 15 million shares from ARCO, to reduce ARCO's stake in the Company to 50 percent (the "Secondary Offering/Repurchase Transaction"). This transaction, which was expected to be completed in July 1998, would have enabled ARCO to pay off $1.4 billion in short-term debt incurred in the $3.3 billion buy-out of the UTP.

56. Paragraph 22 of McMullin's Amended Complaint states:

Instead, on June 18, 1998, Chemical and Lyondell announced that they had entered into a definitive merger agreement whereby Lyondell would acquire Chemical for $57.75 per share with an aggregate value of approximately $1.15 billion, through a cash tender offer followed by a merger for untendered shares.

57. *Citron v. Fairchild Camera & Instrument Corp.*, 569 A.2d at 67.

(The following footnotes appear in the left column:)

51. Paragraph 27 of McMullin's Amended Complaint states:

Accordingly, it was ARCO and SSB, which made a presentation to the Board on June 18, 1998 regarding the terms of Lyondell's proposal and the sale process conducted by ARCO. Merrill Lynch, the Company's nominal financial advisor, was limited to making a *presentation regarding the value of the* Company and simply opined that the transaction was fair—*not* that it was the maximum obtainable in a sale of the Company. Indeed, given ARCO's control of the sale process, neither the individual defendants nor Merrill Lynch possessed sufficient information to make such a determination. Thus, in agreeing to the Acquisition, the individual defendants failed to properly inform themselves of Chemical's highest transactional value.

52. *Cede II*, Del.Supr., 634 A.2d 345, 366–370 (1993); *Smith v. Van Gorkom*, Del.Supr., 488 A.2d 858, 872–873 (1985); *see also Brehm v. Eisner*, Del.Supr., 746 A.2d 244, 259 (2000).

53. *Citron v. Fairchild Camera & Instrument Corp.*, Del.Supr., 569 A.2d 53, 67 (1989).

54. *Id.*

55. Paragraph 21 of McMullin's Amended Complaint states:

### Loyalty Allegations

When the Chemical Board was considering a sale of the entire corporation, it was impermissible for the directors to allow any improper influence to compromise their evaluation of whether the proposed third party transaction with Lyondell would achieve maximum value for all Chemical shareholders.[58] The ARCO officers and designees on Chemical's board owed Chemical's minority shareholders "an uncompromising duty of loyalty."[59] There is no dilution of that obligation in a parent subsidiary context for the individuals who acted in a dual capacity as officers or designees of ARCO and as directors of Chemical.[60]

The substantive protections of the business judgment rule can be claimed only by disinterested directors whose conduct otherwise meets the tests of the rule's procedural requirements.[61] McMullin's Amended Complaint alleges that a majority of Chemical's board of directors was dominated by ARCO. In assessing director independence, Delaware courts apply a subjective "actual person" standard to determine whether a "given" director was likely to be affected in the same or similar circumstances.[62]

The Amended Complaint alleges that six of the twelve Chemical Directors were employed by ARCO, to wit: ARCO's chief financial officer and executive vice-president, another ARCO executive vice-president, and four senior vice-presidents of ARCO. Two other Chemical Directors were alleged to have prior affiliations with ARCO, as officers of other ARCO subsidiaries. McMullin alleges that none of those eight "ARCO controlled" Chemical Directors abstained from the discussions or the vote concerning the proposed transaction between Chemical and Lyondell. McMullin alleges that these ARCO connections caused the Chemical Board to enter into the third-party Transaction with Lyondell.[63]

The allegations of loyalty to ARCO in McMullin's Amended Complaint challenge the independence of the Chemical Board. The Amended Complaint alleges that, if the Chemical Directors had analyzed the sale of Chemical to Lyondell with the goal of maximizing value for all shareholders and not just to accommodate ARCO, the Chemical board would have concluded that the minority shareholders would have fared better in an appraisal than the Lyondell Transaction that it recommended to them. The record reflects that the defendant directors should be required to file an answer to the well-pled loyalty allegations in McMullin's Amended Complaint, regarding the effects of the ARCO-related conflicts. In particular, because it is alleged that those "ARCO conflicted" directors on the Chemical Board did not abstain from participation in approving the third-party Transaction that ARCO had negotiated with Lyondell.[64]

### Improper Delegation Allegations

According to McMullin, the Chemical Directors violated their fiduciary duties of care and loyalty to the minority shareholders by the initial decision to delegate the management of the sale process to a conflicted majority shareholder and by the subsequent uninformed decision to recom-

58. See Mills Acquisition Co. v. Macmillan, Inc., Del.Supr., 559 A.2d 1261, 1284–85 (1988); Revlon, Inc. v. MacAndrews & Forbes Holdings, Inc., Del.Supr., 506 A.2d 173, 182 (1986).

59. Weinberger v. UOP, Inc., Del.Supr., 457 A.2d 701, 710 (1983).

60. Id.

61. Aronson v. Lewis, Del.Supr., 473 A.2d 805, 812 (1984).

62. Cinerama, Inc. v. Technicolor, Inc., Del. Supr., 663 A.2d 1156, 1167 (1995).

63. See Rales v. Blasband, Del.Supr., 634 A.2d 927 (1993).

64. Cinerama, Inc. v. Technicolor, Inc., Del. Supr., 663 A.2d 1156, 1167 (1995).

mend approval of the third-party sale of Lyondell. The Amended Complaint charges ARCO with a conflict of interest in negotiating the sale of Chemical because ARCO insisted upon a cash only transaction. McMullin alleges that the Chemical Directors either disregarded the best interests of the minority shareholders or subordinated them to ARCO's immediate cash needs.

The defendants rely upon the decision of the Court of Chancery in *Unimation*[65] as support for their proposition that the Chemical Directors "breached no fiduciary duty, whether of due care or loyalty, by allowing [controlling shareholder's] representatives to speak for the minority in the negotiations." We agree that the Chemical Board could properly rely on the majority shareholder to conduct preliminary negotiations. The Chemical Board, however, had an ultimate statutory duty and fiduciary responsibility to make an informed and independent decision on whether to recommend approval of the third-party Transaction with Lyondell to the minority shareholders.[66] Fulfilling that obligation directly affected the minority shareholders' decision about whether to refrain from tendering their shares to Lyondell and pursuing an appraisal action during the second step of the Transaction.

The procedural posture in this appeal involves a motion to dismiss McMullin's Amended Complaint. In *Unimation*, the Court of Chancery reviewed a full trial record and concluded that the board satisfied its obligation to act independently and fully inform itself of the actions taken by the majority shareholder in negotiating a sale of the entire company:

Unimation's Directors were fully informed and knowledgeable of the eight-month market search for potential buyers and of Unimation's business, prospects, and value. Those directors discussed the potential Westinghouse merger almost daily between the execution of the merger agreement and the board meeting at which the agreement was approved. Moreover, the Unimation director's meeting was preceded by an extensive meeting of the same persons, sitting as the Condec board, at which Drexel discussed the basis of its opinion that the merger was financially fair to Condec and the Unimation majority. In those circumstances, the fact that the formal Unimation directors' meeting was short is of no moment, because for months Unimation's directors had been kept fully apprised of all relevant facts on an ongoing basis, and they had already considered those facts before their formal meeting was convened.[67]

The issue of whether the directors reached an informed decision to "sell" Chemical on June 18, 1998 must be determined upon the basis of the information then reasonably available to the directors and relevant to their decision to recommend approval of the Lyondell merger proposal to the shareholders.[68] In contrast to the board of director's conduct in *Unimation*, the Amended Complaint filed by McMullin alleges that ARCO unilaterally initiated, structured and negotiated the Transaction to sell all of Chemical.[69] The Amended Complaint contends that as of June 18, the Chemical Board had made no determination of Chemical's entire value as a going concern before making its

**65.** *Van de Walle v. Unimation*, Del. Ch., C.A. No. 7046, slip op. at 29, 1991 WL 29303, Jacobs, V.C. (1991).

**66.** *See Grimes v. Donald*, Del.Supr., 673 A.2d 1207, 1215 (1996) *overruled in part on other grounds Brehm v. Eisner*, Del.Supr., 746 A.2d 244 (2000).

**67.** *Van de Walle v. Unimation*, Del. Ch., C.A. No. 7046, slip op. at 14, 1991 WL 29303, Jacobs, V.C. (1991).

**68.** *Smith v. Van Gorkom*, Del.Supr., 488 A.2d 858, 874 (1985).

**69.** *See Weinberger v. UOP, Inc.*, Del.Supr., 457 A.2d 701, 711 (1983).

expedited decision to recommend approval of ARCO's proposed third-party Transaction with Lyondell.

One can reasonably infer from the Amended Complaint that Chemical's minority shareholders might have received more than $57.75 cash in an appraisal proceeding, if the Chemical Directors had fulfilled their fiduciary duties to *ascertain* whether the proposed sale to Lyondell maximized value for all shareholders. When all of the facts are presented, the Court of Chancery may conclude that the Chemical Directors acted like the directors in *Unimation*—independently and on a fully informed basis. At this stage of the proceedings, however, the Chemical Directors must file an answer to the well-pled allegations to the contrary in McMullin's Amended Complaint.

### *Disclosure Claim*

In properly discharging their fiduciary responsibilities, directors of Delaware corporations must exercise due care, good faith and loyalty whenever they communicate with shareholders about the corporation's affairs.[70] When shareholder action is requested, directors are required to provide shareholders with all information that is material to the action being requested and "to provide a balanced, truthful account of all matters disclosed in the communication with shareholders."[71] The materiality standard requires that directors disclose all facts which, "under all the circumstances, ... would have as-

sumed actual significance in the deliberations of the reasonable shareholder."[72] These disclosure standards are well established.

Earlier this year, we decided another case involving alleged disclosure violations when minority shareholders were presented with the choice of either tendering their shares or being "cashed out" in a third-party merger transaction that had been pre-approved by the majority shareholder.[73] In *Skeen*, it was argued that the minority shareholders should have been given all of the financial data they would need if they were making an independent determination of fair value. We declined to establish "a new disclosure standard where appraisal in an option."[74] We adhere to our holding in *Skeen*.

McMullin's Amended Complaint alleges that the Chemical Directors breached their fiduciary duty by failing to disclose to the minority shareholders material information necessary to decide whether to accept the Lyondell tender offer or to seek appraisal under 8 *Del. C.* § 262.[75] The Court of Chancery summarized the plaintiff's allegations that the defendants breached their duty of disclosure by omitting from the 14D-9 the following information: indications of interest from other potential acquirers; the handling of these potential offers; the restrictions and constraints imposed by ARCO on the potential sale of Chemical; the information provided to Merrill Lynch and the valuation methodologies used by Merrill Lynch. In a similar

---

**70.** *See Malone v. Brincat,* Del.Supr., 722 A.2d 5, 10 (1998); *Emerald Partners v. Berlin,* Del. Supr., 726 A.2d 1215, 1223 (1999); *see also Zirn v. VLI Corp.,* Del.Supr., 621 A.2d 773, 778 (1993).

**71.** *Malone v. Brincat,* 722 A.2d at 10. *Accord Skeen v. Jo–Ann Stores, Inc.,* Del.Supr., 750 A.2d 1170, 1171 (2000); *Arnold v. Society for Sav. Bancorp.,* Del.Supr., 650 A.2d 1270 (1994); *Zirn v. VLI Corp.,* 621 A.2d at 778–79.

**72.** *Arnold v. Society for Sav. Bancorp.,* 650 A.2d at 1277 (quoting *TSC Indus. v. Northway, Inc.,* 426 U.S. 438, 449, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976)).

**73.** *Skeen v. Jo–Ann Stores, Inc.,* Del.Supr., 750 A.2d 1170 (2000).

**74.** *Id.* at 1174.

**75.** Paragraph 38 of McMullin's Amended Complaint states: "Accordingly, Chemical shareholders could not determine from these materials what the intrinsic value of the shares was and why the proposed acquisition by Lyondell was preferable to other alternatives."

context, the Court of Chancery has held the fact that the majority shareholder controls the outcome of the vote on the merger "makes a more compelling case for the application of the recognized disclosure standards."[76]

■ When a complaint alleges disclosure violations, courts are required to decide a mixed question of fact and law.[77] In the specific context of this case, an answer to the complaint, discovery and a trial may all be necessary to develop a complete factual record before deciding whether, as a matter of law, the Chemical Directors breached their duty to disclose all material facts to the minority shareholders.[78] The disclosure violations alleged in McMullin's Amended Complaint are, if true, sufficient to withstand a motion to dismiss.

### Affirmative Defense

ARCO submits that this Court should affirm the Court of Chancery's judgment on a basis it did not reach, to wit: Article Seventh of the Chemical certificate of incorporation which was adopted pursuant to 8 *Del. C.* § 102(b)(7) and provides:

> To the fullest extent permitted by the General Corporation Law of Delaware as the same exists or may hereafter be amended, a director of the Company shall not be liable to the Company or its stockholders for monetary damages for breach of fiduciary duty as a director.

■ We have decided not to address that issue in this appeal. In *Emerald Partners*, this Court noted "for the guidance of the Court of Chancery and the parties, that the shield from liability pro-

vided by a certificate of incorporation provision adopted pursuant to 8 *Del. C.* § 102(b)(7) is in the nature of an affirmative defense. Defendants seeking exculpation under such a provision will normally bear the burden of establishing each of its elements."[79] We also note, however, that such provisions cannot provide protection for directors who breach their duty of loyalty.[80]

### Conclusion

The judgment of the Court of Chancery is reversed. This matter is remanded for further proceedings in accordance with this opinion.

---

**76.** *Sealy Mattress Co. of New Jersey, Inc. v. Sealy, Inc.*, Del.Supr., 532 A.2d 1324, 1338 (1987) (quoting *Wacht v. Continental Hosts, Ltd.*, Del. Ch., C.A. No. 7954, slip op. at 7, 1986 WL 4492, Berger, V.C. (April 11, 1986)).

**77.** *Arnold v. Society for Sav. Bancorp*, Del. Supr., 650 A.2d 1270, 1276 (1994).

**78.** *Skeen v. Jo–Ann Stores, Inc.*, Del.Supr., 750 A.2d 1170 (2000).

**79.** *Emerald Partners v. Berlin*, Del.Supr., 726 A.2d 1215, 1223–24 (1999) (internal citations omitted); *see also Zirn v. VLI Corp.*, Del.Supr., 681 A.2d 1050 (1996); *Arnold v. Society for Sav. Bancorp.*, 650 A.2d 1270.

**80.** *Cinerama, Inc. v. Technicolor, Inc.*, Del. Supr., 663 A.2d 1156, 1165 n. 17 (1995).