# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| FREDRIC D. PASCAL, derivatively on behalf of COLUMBIA FINANCIAL, INC., and individually on behalf of himself and all other similarly situated stockholders of COLUMBIA FINANCIAL, INC., | ) ) ) ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 2020-0320-SG |
| FRANK CZERWINSKI, RAYMOND G. HALLOCK, NOEL R. HOLLAND, THOMAS J. KEMLY, HENRY KUIKEN, MICHAEL MASSOOD, JR., ELIZABETH E. RANDALL, AND ROBERT VAN DYK, | ) ) ) ) ) ) ) | |
| Defendants, | ) ) | |
| and | ) ) | |
| COLUMBIA FINANCIAL, INC., a Delaware Corporation | ) ) ) | |
| Nominal Defendant. | ) | |

## MEMORANDUM OPINION

Date Submitted: September 3, 2020
Date Decided: December 16, 2020

David A. Jenkins and Neal C. Belgam, of SMITH, KATZENSTEIN & JENKINS LLP, Wilmington, Delaware; *Attorneys for Plaintiff Fredric D. Pascal*.

Kenneth J. Nachbar and Zi-Xiang Shen, of MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, Delaware, *Attorneys for Defendants Frank*

*Czerwinski, Raymond G. Hallock, Noel R. Holland, Thomas J. Kemly, Henry Kuiken, Michael Massood, Jr., Elizabeth E. Randall, and Robert Van Dyk.*

Susan M. Hannigan, of RICHARDS LAYTON & FINGER, P.A., Wilmington, Delaware, *Attorneys for Nominal Defendant Columbia Financial, Inc.*

GLASSCOCK, Vice Chancellor

As abundantly demonstrated by recent litigation in our courts, the mundane act of setting director compensation[1] is fraught with potentially litigable issues. Obviously, this is an artifact of the truism that directors control the corporate assets, and that director salaries and stock awards represent a transfer of those assets—which directors control as fiduciaries for the corporation—to themselves.

Here, the Defendants are corporate directors who awarded themselves bonuses. The Plaintiff is a stockholder in the corporation, proceeding derivatively against the defendant directors: The Plaintiff alleges, in Counts I and II of their complaint, that the Defendants' actions in awarding themselves bonuses amount to breaches of fiduciary duties and unjust enrichment. Those issues will turn in part on whether the bonuses were adequately approved by stockholder action regarding an equity incentive plan. The Plaintiff also brings a direct claim, however; they allege that the Defendants breached duties in way of proxy materials advocating stockholder approval of the equity incentive plan, such that the disclosures therein were materially deficient. They ask that I invalidate the entire incentive plan.

The Defendants have moved to dismiss this direct claim only, set out in the Complaint in Count III. They argue that the Plaintiff has failed to state a claim under Chancery Rule 12(b)(6). This Memorandum Opinion examines the pleading with respect to this issue, and concludes that the Motion to Dismiss should be granted.

---

[1] *See* 8 *Del. C.* § 141(b) (confirming directorial authority to set director compensation).

2

As the reader will discover, I take some pains to attempt to segregate vexingly related topics: this decision only addresses whether, in light of the facts and reasonable inferences in and from the complaint, it is reasonably conceivable that any shortcomings in the proxy disclosures were material to stockholders such that I must void the entire incentive plan resulting therefrom. This is distinct from the issues raised in the derivative section of the complaint—*e.g.*, were the actual awards in breach of fiduciary duties? Those issues await further litigation. Count III, however, is dismissed.

My reasoning is below.

## I. BACKGROUND[2]

*A. The Parties*

Nominal Defendant Columbia Financial, Inc. (the "Company") is a Delaware corporation with its principal place of business in Fair Lawn, New Jersey.[3]

Plaintiff Fredric D. Pascal owns 500 shares of Columbia Financial common stock.[4] He has continuously held his shares of stock since April 2018.[5]

Defendants Frank Czerwinski, Raymond Hallock, Noel Holland, Henry Kuiken, Michael Massood Jr., Elizabeth Randall, and Robert Van Dyk are all non-

---

[2] The facts, except where otherwise noted, are drawn from the Verified Stockholder Derivative and Class Action Complaint ("Compl."), Dkt. No. 1, and exhibits or documents incorporated therein, and are presumed true for the purposes of this Motion to Dismiss.

[3] Compl. ¶ 7.

[4] Compl. ¶ 6.

[5] Compl. ¶ 6.

employee directors of the Company.[6]  Defendant Thomas Kemly (collectively, with Czerwinski, Hallock, Holland, Kuiken, Massood, Randall, and Van Dyk, the "Individual Defendants") is the Company's President and CEO, a post he has held since 2011.[7]  He has been a member of the Company's board of directors (the "Board") since 2006.[8]

*B. Factual Overview*

The Company is the holding company of Columbia Bank, a federally chartered savings bank which operates 64 full-service banking offices in New Jersey.[9]  Before April 19, 2018, the Company was wholly owned by Columbia Financial, MHC ("MHC"), a federally chartered mutual holding company created specifically to be the Company's mutual holding company.[10]  On April 19, 2018, the Company conducted a minority stock offering, issuing 49,832,345 shares of common stock to, among others, depositors of the Bank (the "Minority Stock Offering").[11]  MHC retained a controlling stake of 62,580,155 shares.[12]

In connection with the Minority Stock Offering, the Company filed a prospectus in which it indicated that it intended to adopt an equity incentive plan

---

[6] Compl. ¶¶ 8–15.
[7] Compl. ¶ 11.
[8] Compl. ¶ 11.
[9] Compl. ¶16.
[10] Compl. ¶ 17.
[11] Compl. ¶ 19.
[12] Compl. ¶ 19.

4

under which it could give equity-based awards to its employees, officers, and non-employee directors.[13] Accordingly, on October 23, 2018, the Board's Compensation Committee (the "Compensation Committee") held a meeting with Kemly and legal counsel.[14] At the meeting, legal counsel made a presentation to the Compensation Committee which focused on "Next Steps," and which listed ten "Action Items."[15] These action items included an education session, meeting with a compensation consultant and formulating an equity incentive plan, the preparation of the equity incentive plan's terms and conditions, the submission of the plan to the Board and the stockholders for approval.[16] The later action items included the formulation of "specific awards . . . in consultation with [the] compensation consultant" and the Compensation Committee's recommendation "to the full Board as to equity awards for named executives and non-employee directors."[17]

On April 22, 2019, the Company filed its 2019 Schedule 14A Definitive Proxy Statement (the "2019 Proxy"). In that proxy, the Company sought approval of the equity incentive plan (the "EIP") that the Board had unanimously approved on April 16, 2019.[18] The EIP provided for, among other things, a reserve of 7,949,996 shares

---

[13] Compl. ¶ 34.
[14] Compl. ¶ 52.
[15] Compl. ¶ 52.
[16] Compl. ¶ 53.
[17] Compl. ¶ 53.
[18] Compl. ¶ 35; Defendants' Opening Br. in Support of Their Mot. To Dismiss Count III of the Verified S'holder Deriv. and Class Action Compl., Exhibit A ("2019 Proxy"), at 17, Dkt. No. 11. "In deciding a motion to dismiss under Rule 12(b)(6), the court may judiciously rely on proxy

of the Company's common stock for equity awards to the Company's employees, officers, and non-employee directors.[19]

The full text of the EIP was attached to the 2019 Proxy, which itself provided a summary of the EIP as well as reasons why stockholders should approve it.[20] According to the 2019 Proxy, the Board believed the EIP was beneficial because giving "employees, officers and non-employee directors" an ownership stake, would "stimulat[e] their efforts on behalf of Columbia Financial and strengthen[ ] their desire to remain with Columbia Financial."[21] The 2019 Proxy explained that, "[h]istorically," the Company had "[n]ot [b]een [a]ble to [ma]ke [e]quity-[b]ased [i]ncentive [a]wards," while "[m]ost of [the Company's] competitors offer equity-based compensation to their employees and non-employee directors."[22] The continuation of such a "severe competitive disadvantage" would cause the Company to "have to rely entirely on the cash component of its employee compensation program to attract new employees and to retain our existing employees."[23] Accordingly, the Board warned, the failure to adopt the EIP "would likely increase cash compensation expense over time and use up cash that might be better utilized

---

statements not to resolve disputed facts but at least to establish what was disclosed to shareholders." *In re Santa Fe Pac. Corp. S'holder Litig.*, 669 A.2d 59, 69 (Del. 1995) (quoting *Abbey v. E.W. Scripps Co.*, 1995 WL 478957, at *1 n.1 (Del. Ch. Aug. 9, 1995)).

[19] Compl. ¶ 35.

[20] 2019 Proxy, at 18–19.

[21] 2019 Proxy, at 18.

[22] 2019 Proxy, at 18.

[23] 2019 Proxy, at 18.

if reinvested in Columbia Financial's business or returned to Columbia Financial's stockholders."[24] In short, the 2019 Proxy explained, the EIP should be adopted because, otherwise, the Company would "be at a significant disadvantage as compared to [its] competitors to attract and retain [its] executives as well as directors and this could affect [its] ability to achieve [its] business plan growth and goals."[25]

The 2019 Proxy also noted that "[t]he purpose of the 2019 Equity Plan is to promote the long-term growth and profitability of" the Company "by . . . providing employees and non-employee directors . . . with incentives to maximize stockholder value and otherwise contribute to the success of" the Company. Further, the EIP would "enabl[e] Columbia Financial to attract, retain and reward the best available persons for positions of substantial responsibility and to recognize significant contributions made by such individuals to the Company's success."[26] Finally, the 2019 Proxy informed stockholders that "[i]n determining the number of shares to request pursuant to the 2019 Equity Plan, Columbia Financial considered a number of factors, including: . . . (ii) industry practices related to the adoption of equity based incentive plans by recently converted institutions . . . ."[27] The stockholders approved the EIP on June 6, 2019.[28]

---

[24] 2019 Proxy, at 18.
[25] 2019 Proxy, at 19.
[26] 2019 Proxy, at 20.
[27] 2019 Proxy, at 19.
[28] Compl. ¶ 36.

7

On July 23, 2019, the Company approved the issuance of equity-based incentive awards to the Individual Defendants under the EIP (the "Awards").[29] The non-employee directors each received an award of 34,038 shares of time-based restricted stock, valued at $530,993 using the $15.60 per share closing price of the Company's common stock at the time of the award.[30] They also each received 83,294 stock options, valued by the Company at $354,000.[31] Both of these awards vest ratably over a five-year period and continue to vest even after the director's retirement from the Board, as long as the director continues to serve as an advisory director.[32] Kemly, the sole employee director, received an award of 134,134 shares of time-based restricted stock, valued at $2,092,490 using the $15.60 per share closing price of the Company's common stock at the time of the award.[33] He also received an award of performance-based restricted stock, pursuant to which he could receive up to 134,135 shares of common stock based on the achievement of performance goals over a three-year period—an award valued by the Company at $2,092,506.[34] Finally, he received 656,471 stock options, valued by the Company at $2,790,002.[35] Like the awards granted to the non-employee directors, Kemly's

---

[29] Compl. ¶ 37.
[30] Compl. ¶ 37.
[31] Compl. ¶ 37.
[32] Compl. ¶ 37.
[33] Compl. ¶ 38.
[34] Compl. ¶ 38.
[35] Compl. ¶ 38.

8

award vests ratably over a five-year period.[36]  The Award issuance totaled over $13 million in equity awards, which amounted to roughly 22% of the total shares reserved under the EIP.[37]

The Company's April 10, 2020 Schedule 14A Definitive Proxy Statement (the "2020 Proxy"), before discussing the Awards, noted that the Company's prior inability to grant equity-based incentive awards to its employees was "a limitation that many of [its] competitors did not face" and that such limitation "posed challenges in recruiting key individuals from the competitive market, retaining critical employees through the use of multi-year vesting periods . . . and aligning the compensation interests of our executives and directors with those of our stockholders."[38]  The 2020 Proxy also explained that the EIP "is consistent with the equity incentive plans of other similarly situated financial institutions that converted to public companies, either through a mutual holding company initial offering, a standard conversion or a second-step conversion."[39]  Further, the 2020 Proxy noted, "[e]quity plans adopted in connection with conversion transactions are unique" and "initial awards under such plans . . . tend to be larger than equity grants made by

---

[36] Compl. ¶ 38.
[37] Compl. ¶ 39.
[38] Defs.' Opening Br. in Support of Their Mot. to Dismiss Count III of the Verified S'holder Deriv. and Class Action Compl., Exhibit B ("2020 Proxy"), at 35, Dkt. No. 11.
[39] 2020 Proxy, at 35.

other public companies, in part to recognize significant contributions to the success of such converted institutions prior to becoming a public company."[40]

Regarding the Awards themselves, the 2020 Proxy explained that the Board took into account a number of factors, including

> individual and corporate performance, tenure with the organization and future potential to impact our organization. In addition, we considered the fact that our executive team had never previously had the ability to participate in organizational value growth through equity ownership, as well as our shareholders' expectations of significant equity ownership for executives. We also considered common industry practice for both the prevalence and magnitude of equity awards following a conversion transaction, with reference to the post-conversion peer group discussed above on page 29.[41]

Additionally, the 2020 Proxy informed stockholders that "[t]he Compensation Committee intends the [Awards] to cover a multi-year period, as reflected through multi-year performance and vesting periods of the grants."[42] Accordingly, the Board did "not anticipate granting additional equity awards to our current executive officers for a period of years."[43]

*C. Procedural History*

The Plaintiff filed his Complaint on April 30, 2020, alleging a derivative breach of duty claim, ("Count I"), a derivative claim for unjust enrichment ("Count II"), and a direct breach of fiduciary duty claim ("Count III"). On June 22, 2020,

---

[40] 2020 Proxy, at 35–36.
[41] 2020 Proxy, at 36.
[42] 2020 Proxy, at 36.
[43] 2020 Proxy, at 36.

the Defendants moved to dismiss Count III only. Count III alleges that "[t]he Defendants owe fiduciary duties to the Company's stockholders, including the duty to speak truthfully when seeking stockholder action."[44] It further alleges that "[t]he Defendants breached their fiduciary duty by causing the Company to issue the 2019 Proxy, which the Defendants knew omitted material information and contained false and misleading representations in connection with the stockholders' vote on the [EIP]."[45] The Complaint requests that I declare the EIP "invalid and cancelled" because the stockholder vote was not fully informed.[46] I heard Oral Argument on the Defendants' Motion to Dismiss Count III of the Complaint on September 3, 2020 and consider the matter fully submitted as of that date.

## II. ANALYSIS

This is a motion to dismiss a direct claim, Count III, under Court of Chancery Rule 12(b)(6). "When considering a defendant's motion to dismiss, a trial court should accept all well-pleaded factual allegations in the Complaint as true, accept even vague allegations in the Complaint as 'well-pleaded' if they provide the defendant notice of the claim, draw all reasonable inferences in favor of the plaintiff,

---

[44] Compl. ¶ 165.
[45] Compl. ¶ 166.
[46] Compl. ¶¶ 167–68.

11

and deny the motion unless the plaintiff could not recover under any reasonably conceivable set of circumstances susceptible of proof."[47]

In Count III, the Plaintiff asks me to invalidate the approval of the EIP by stockholder action resulting from the 2019 Proxy, and accordingly declare the EIP void. Directors seeking stockholder action have a common-law duty to provide all material information in their control to stockholders, with the standard controlled by the duties of care and loyalty.[48] "Material information" is a term not so broad as to encompass *any* information that might be interesting or helpful to a voting stockholder. "Information is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote. In other words, information is material if, from the perspective of a reasonable stockholder, there is a substantial likelihood that it significantly alter[s] the 'total mix' of information made available."[49]

The gravamen of Count III, as explained by counsel at Oral Argument,[50] is that the Board (a) planned to use the EIP to retroactively reward themselves for taking the Company public, (b) had been planning to do so even before issuing the 2019 Proxy, which solicited the stockholders' vote for the EIP, but (c) did not

---

[47] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, 27 A.3d 531, 536 (Del. 2011).

[48] *See, e.g.*, *Malone v. Brincat*, 722 A.2d 5, 9 (Del. 1998).

[49] *In re Trulia, Inc. S'holder Litig.*, 129 A.3d 884, 899 (Del. Ch. 2016) (citations omitted).

[50] I note that the Plaintiff's oral presentation deviated in some respects from the briefing. To the extent those conflict, I have responded to the claims as clarified at Oral Argument.

12

include any disclosure of that plan in the 2019 Proxy, as demonstrated by the fact that (d) the 2019 Proxy's language regarding the EIP framed the EIP as contemplating forward-looking compensation *only*.  This can be simplified, thus: Did the directors withhold information about their intentions in the proxy on which the stockholders relied in approving the EIP, and is it conceivable that the omitted information was material?

It is worth noting here that the Defendants made awards to themselves under the EIP that are, objectively, quite generous.  They made these awards, presumably, pursuant to the EIP, but the amounts of the awards were not specifically enumerated in the EIP—the awards were formulated after the EIP was adopted, and the specific awards were subjects of the 2020 Proxy.  Whether those awards were consistent with fiduciary duties will turn on a record presented in motions for summary judgement, or at trial.  Those issues are not before me in this partial Motion to Dismiss; instead, they reside within Counts I and II, which are not at issue here.

Here, the issue is quite limited. The complaint alleges that among the reasons for the EIP was the directors' intent to award themselves equity under the plan, justified by their efforts to take the company public, but that they failed to disclose in the 2019 Proxy that they intended the EIP to reward past efforts, only to incentivize future actions.  But, as laid out below, the 2019 Proxy did disclose both intentions: the Proxy provided that the EIP was meant to "attract, *retain and reward*

13

*the best available persons* for positions of substantial responsibility and to *recognize significant contributions* made by such individuals to the Company's success."[51] What is left of the Plaintiff's disclosure claim in Count III, I find, is this: the Defendants had in mind an award of equity to themselves recognizing past performance at the time of the 2019 Proxy, including for their efforts in taking the company public; but the 2019 Proxy only described their intent to reward and incentivize directorial performance *generally*, and did not refer specifically to the go-public effort or "conversion award." The issue before me is whether it is reasonably conceivable that that specific directorial intent, omitted from the 2019 Proxy, would be material to stockholder approval of the EIP.

> *A. The 2019 Proxy's language explicitly discloses the possibility of awards for accomplishments that have already been achieved.*

The Complaint alleges that the EIP was designed specifically to allow payment of the Awards as retrospective compensation for the conversion of the Company from private to public—a motive that the Plaintiff argues should have been disclosed.[52] The facts alleged in the Complaint to support this conclusion are as follows: (1) that the Compensation Committee had considered and was following what the Plaintiff calls a "10 step" process[53]—*i.e.*, the ten action items presented by

---

[51] 2019 Proxy, at 20.
[52] Compl. ¶ 91; Tr. of Sept. 3, 2020, Oral Argument Via Zoom on Defs' Mot. To Dismiss Count III of the Verified S'holder Deriv. and Class Action Compl., at 40–41, Dkt. No. 25 [hereinafter "Oral Argument Tr."].
[53] Compl. ¶ 51.

legal counsel to the Compensation Committee in its presentation about "Next Steps" following the go-public conversion;[54] (2) that the sixth action item involved obtaining stockholder approval of the EIP;[55] (3) that the later action items included the formulation of "specific awards . . . in consultation with [the] compensation consultant" and the Compensation Committee's recommendation "to the full Board as to equity awards for named executives and non-employee directors";[56] (4) that a consultant had distributed a presentation in December 2018 titled "Conversion Peer Group";[57] (5) that the directors chose peers from a larger group, eliminating 11 of 26 total considered peers, and seven of the 11 eliminated companies were those with the lowest conversion awards to non-employee directors;[58] (6) that, in March of 2019, the Compensation Committee asked its consultant to "provide[ ] the [Compensation] Committee with initial broad, estimated equity grant ranges in order to determine the size of the share pool authorization for the equity plan, based on equity plans adopted by recently converted institutions";[59] (7) that the Board considered "Treatment of Non-Employee Director Award[s]" when designing the EIP;[60] (8) that 17 days before the 2019 annual meeting of stockholders, the

---

[54] Compl. ¶ 52.
[55] Compl. ¶ 91.
[56] Compl. ¶ 53.
[57] Compl. ¶ 56.
[58] Compl. ¶ 60.
[59] Compl. ¶ 68.
[60] Compl. ¶ 71.

15

Compensation Committee met to review a consultant's report, titled "Post-Conversion Equity Grants – Preliminary Straw Models";[61] (8) that the day after the EIP was approved by the stockholders, the chairman of the Compensation Committee remarked that "'given the detailed materials that have been reviewed by the [Compensation] Committee to date and the discussions held in past meetings,' that the directors were ready to formulate grant recommendations";[62] and (9) that the Awards were made "exactly six months" after the Board's approval of its "Conversion Peer Group."[63]

I find that the Complaint adequately alleges that the Individual Defendants intended as one motive for the EIP to compensate themselves for efforts—including go-public efforts—predating its approval. The Plaintiff argues that this motive went undisclosed in the 2019 Proxy. While it is true that the 2019 Proxy did not explicitly mention the possibility of retrospective payment *for the go-public conversion*,[64] that Proxy did set out that the company might issue awards in part *for past accomplishments*. And, given that "awards for past accomplishments" encompasses

---

[61] Compl. ¶ 99.
[62] Compl. ¶ 85.
[63] Compl. ¶ 66.
[64] The 2019 Proxy did disclose that the number of shares designated for awards was based in part on similar plans of banks newly taken public. At this pleading stage, however, I grant the inference that this was not sufficient to inform stockholders about the specific intent of the Board regarding compensation for go-public efforts.

16

"retrospective payment for the conversion," I do not find it reasonably conceivable that stockholders would have found the difference between the two to be material.

A reader of Proposal 2 of the 2019 Proxy would understand that the Board believed that the Company had been disadvantaged in terms of compensating its directors and that the EIP was targeted at remedying that. The 2019 Proxy begins its explanation of why stockholders should approve the EIP by noting that equity incentives "encourage and enable . . . directors . . . upon whose judgment, initiative and efforts Columbia Financial *has depended* and continues to largely depend . . . to acquire an ownership stake" in the Company.[65] The first subtitle, right under that paragraph, reads: "Historically, We Have Not Been Able to Make Equity-Based Incentive Awards."[66] The 2019 Proxy goes on to note that "[m]ost of our competitors offer equity-based compensation to their employees and non-employee directors. We view the ability to offer equity-based compensation as *an important step in our ability to compete for talent within our marketplace*."[67] The necessary implication of the words "an important step" is that the Company had been unable to fairly compensate its directors and executives and would continue to be unable to fairly compensate them until the EIP was adopted.

---

[65] 2019 Proxy, at 18.
[66] 2019 Proxy, at 18.
[67] 2019 Proxy, at 18 (emphasis added).

Indeed, the 2019 Proxy emphasizes that unfairness by noting that "[i]f the 2019 Equity Plan is not approved, we will be at a significant disadvantage as compared to our competitors to attract and retain our executives as well as directors and this could affect our ability to achieve our business plan growth and goals."[68] Of note is that the EIP must be adopted by the stockholders to take effect, and so the failure to adopt the EIP leaves the Company at its status quo. By explaining that a failure to approve the EIP leaves the Company at a "significant disadvantage," the Company is admitting that its current situation places it at a significant disadvantage—something it hopes to remedy by adoption of the EIP. In summary, a reasonable stockholder reading the 2019 Proxy would have been aware that the Board believed its executives and directors had not been fairly compensated, and that the EIP was meant to fix that—presumably by providing the ability to compensate the executives and directors and true-up the difference. A stockholder considering the EIP would have likewise been aware that the company's position was that directors and executives had been denied opportunities to be remunerated in equity, that such disadvantages put the company itself at a disadvantage, and that the EIP was designed to remedy that. That is, the stockholders were on notice that, if the EIP was adopted, the Board would consider equity awards to make up for past underpayment and incentivize retention and future performance. All that is missing,

---

[68] 2019 Proxy, at 18.

18

from the Plaintiff's point of view, is that the directors intended such awards specifically in connection with taking the bank public, via contemplated "conversion awards." The stockholders were told the amount of stock available for incentive awards, the anticipated recipients, the maximum limits on individual awards, and the goals of the program. In light of these disclosures, I do not consider a further disclosure along the lines of "among the awards we are considering is an award to compensate our successful efforts to take the bank public" to be material. Given the disclosures made as to the intent of the program, a disclosure of the cumulative fact that the directors felt entitled to compensation for a particular piece of prior performance was not, I think, material in light of the total mix of information presented.

This is particularly so in light of the fact that the EIP was meant to permit awards to executives as well as non-employee directors, and that awards to the Individual Defendants themselves under the EIP are subject to entire fairness review if the plan leaves the directors with discretion with respect to the award.[69] In other words, the stockholders were asked to approve a plan that would provide stock incentives to employees and directors. The plan did not include the amounts of the

---

[69] *In re Inv'rs Bancorp, Inc. S'holder Litig.*, 177 A.3d 1208, 1211 (Del. 2017), *as revised* (Dec. 19, 2017) ("[W]hen stockholders have approved an equity incentive plan that gives the directors discretion to grant themselves awards within general parameters, and a stockholder properly alleges that the directors inequitably exercised that discretion, then the ratification defense is unavailable to dismiss the suit, and the directors will be required to prove the fairness of the awards to the corporation.").

19

awards proposed, as those had not yet been determined.[70] To the extent the plan was insufficiently explicit so as to remove discretion from the approval of self-directed awards by the Board, the company and its stockholders are protected by entire fairness review. That is the focus of the derivative parts of this complaint. The specific intent of the directors with respect to future self-awards, in the context of seeking the *general* authority granted in the EIP, is unlikely, therefore, to be material. It is not reasonably conceivable that the non-disclosure the Plaintiff points to is material, sufficient to find the EIP void, which is the relief requested. [71]

*B. The 2019 Proxy disclosed the influence of data from recently-converted peer banking institutions.*

At Oral Argument, the Plaintiff contended that not only did the 2019 Proxy need to disclose the directors' motive concerning awards they may make under the Plan, but that the 2019 Proxy should also have disclosed that the peer group used to design the EIP's share reserve and size of the annual director cap was "a special peer group of converted banks."[72] I need not consider whether such disclosure would be material, because in any event, the Defendants did make this disclosure. Specifically, on page 19 of the 2019 Proxy, the Board disclosed that "[i]n

---

[70] 2019 Proxy, at 22 ("Although no decision has been made, we anticipate that the initial grants made by the [Compensation] Committee to non-employee directors and employees . . . will, in each case, be less than the limits set forth in the 2019 Equity Plan."). At Oral Argument, the Plaintiff did not contest that the specific amount of the Awards had yet to be determined at the time of the 2019 Proxy's issuance. Oral Argument Tr., at 40.

[71] Compl. ¶¶ 167–68.

[72] Oral Argument Tr., at 42.

determining the number of shares to request pursuant to the 2019 Equity Plan, Columbia Financial considered a number of factors, including: . . . (ii) industry practices related to the adoption of equity based incentive plans *by recently converted institutions . . . .*"[73] This disclosure does not, to my mind, contain a material omission.

> *C. The Plaintiff's attacks on the size of, and process used to calculate, the Awards go to Counts I and II, which are derivative claims, rather than direct disclosure claims.*

The remaining allegations in the Complaint are in regard to the size of the Awards and the cherry-picking of the peer group used to calculate them. Those allegations go to the *fairness* of the self-dealing award and whether it can be deemed authorized under the terms of the EIP. These allegations are not relevant to disclosures in the 2019 Proxy, which is the subject of Count III. Rather, they implicate the first two Counts, in which the Plaintiff derivatively challenges the awards to the directors under the EIP as inequitable self-dealing under the guise of discretion provided by the EIP. These issues, presumably, will be evaluated under the entire fairness standard.[74] Success by the Plaintiff in its Count III disclosure challenge is not a necessary predicate to a challenge to the Awards themselves.

---

[73] 2019 Proxy, at 19.
[74] *In re Inv'rs Bancorp, Inc. S'holder Litig.*, 177 A.3d 1208, 1211 (Del. 2017), *as revised* (Dec. 19, 2017).

Accordingly, the allegations regarding the fairness of the Awards—both its size and the process by which it was awarded—are appropriately reserved for a merits determination of Counts I and II, which allege breaches of fiduciary duty and unjust enrichment and which are not subject to this partial Motion to Dismiss.

### III. CONCLUSION

The Defendants' Motion to Dismiss Count III is GRANTED. The parties should submit a form of order consistent with this Memorandum Opinion.